JOSIAH ETHERIDGE v. CHAUNCEY W. WISNER.

*Mortgage—Deed absolute on its face.*

1. "A party seeking to modify the operation of the instrument,
and prove himself entitled, against the terms of his own deed,
to an equity of redemption, is not only bound to make out
that the transaction was, in truth and justice, nothing more
than the giving of security, but is required to do so by a force
of evidence sufficient to command the unhesitating assent of
every reasonable mind." *Tilden v. Streeter,* 45 Mich. 540.

2. In this case it is held, from a careful reading of the record,
that the complainant has *wholly* failed to establish an agree-
ment between himself and defendant that the deed of March
6, 1878, was to be held or treated as a security, and that the
evidence to the contrary is overwhelming.

Appeal from Saginaw. (Gage and Edget, JJ.) Argued
May 5, 1891. Decided May 21, 1891.

Bill to declare a deed to have been given as security, and to redeem. Complainant appeals. Decree dismissing bill affirmed. The facts are stated in the opinion.

*Tarsney & Weadock,* for complainant.

*Wisner & Draper,* for defendant.

LONG, J. The bill was filed in this cause in the circuit court for Saginaw county in chancery for the purpose of recovering title to certain lands in that county. Proofs were taken in open court before the two circuit judges of that circuit, who thereafter made a decree dismissing complainant's bill, with costs. Complainant appeals.

The facts are so fully stated in an opinion rendered by the circuit judge that we adopt that opinion as a statement of facts. It is as follows:

"The bill in this case is filed to obtain a conveyance from the defendant of a farm of 80 acres, in the township of Bridgeport, situated on the Genesee plank-road between Saginaw and Bridgeport.

"The claim of the complainant is that he conveyed this farm to the defendant by a deed absolute on its face, but that it was intended as security for certain moneys paid for and loaned to the complainant by the defendant, as he alleges; and he seeks to have the deed adjudged a mortgage, with the right of redemption.

"The property was conveyed in March, 1878, and this suit was brought in 1889, last year. For many years prior to March, 1878, the parties had been friends. The complainant had been engaged in the sale of liquors, and had amassed considerable property. He was, however, a man of limited information, but had some business ability. He had acquired the Eagle block, a brick store in East Saginaw, the farm in question, and a vacant lot on Cass street, in the same place.

"The defendant was a lawyer by profession, though not in active practice. He was a good business man, and the complainant had been in the habit of advising with him as to business matters, real-estate purchases, purchas-

ing business paper, etc. They were quite intimate in this way, and were personal friends.

"In the year 1876, before the complainant owned the farm in question, the complainant had some difficulty with his wife, that continued from the year 1876 until February, 1878, when it culminated in a separation. When the difficulty commenced, in 1876, complainant was living in town in a brick house, and in the year 1877 (about a year after the difficulty commenced) he bought the farm in question. During the time of the difficulty, and from its inception, the complainant advised with the defendant on the subject. When the difficulty culminated, the complainant concluded to leave Saginaw, and go to the West, and he desired to take $10,000 with him. He was owing upon the farm about $1,900, and desiring 'to settle,' as he terms it, with his wife, the services of the defendant were solicited to aid him in this, and also to aid him in the disposition of his property. The defendant, after several interviews, succeeded in making an arrangement with his wife by which she was to receive $1,500 in cash, and also such personal property as she might desire to select from the home, she having in previous interviews demanded a much larger sum. To carry out this arrangement, the complainant's wife executed a deed of her interest to defendant, and retained in her possession the deed until she should receive the stipulated sum and select the personal property. The money to pay her was obtained by discounting complainant's note at ten days, indorsed by the defendant. Efforts were then made to sell the Eagle block, by offering it to several persons at $8,000; and the farm was also offered to one or more parties, but without success. In the mean time defendant claims that the complainant importuned him to purchase the farm, which he declined to do, and the defendant is corroborated in his statement in this respect.

"After an inability to dispose of the property to others, as has been stated, the defendant claims that, after repeated solicitations, he made this arrangement with the complainant: That, if complainant would make out a deed of his property to him, his real estate, and some personal property that was upon the farm, and hold the deed until, by a sale of the farm or any of the property, he could realize sufficient money to pay complainant $10,000, he would take it, and also take care of the note of

$1,500 that had been discounted to pay the wife, and also the mortgages upon the farm. A deed of the property was accordingly made to the defendant on the 6th of March, 1878, with a consideration stated at $10,000.

"The proofs show that, subsequent to the date of this deed, the parties attempted to negotiate for the sale of the Eagle block, and that about the 25th of March the negotiations were successful, and the Eagle block was sold to Swett and Soyer, of East Saginaw, for $8,000, with the entire approval of the complainant, as he admits, the defendant and his wife making the conveyance to Swett and Soyer; and the deed given to defendant by complainant, which had heretofore remained in his possession, was given to the defendant and placed on record. The entire $8,000 was paid to complainant, Etheridge; the $1,500 note of complainant was taken up by a note of defendant, Wisner, and indorsed by the complainant, which defendant, Wisner, afterwards took up by his own note, without the complainant's indorsement, and afterwards paid that note. At the same time the defendant gave to the complainant his personal note, payable on demand, for $2,000, to make up the $10,000 desired by the complainant, and he subsequently paid also complainant's mortgage amounting to $2,000.

"The contention arises in this way: The defendant claims that the deed was intended as an absolute sale; while the complainant claims that it was intended, as far as the farm was concerned, as security for the $2,000 note payable on demand, which he expected to use to make up $10,000, also as security for the sums paid or to be paid by the defendant to his wife, and any sums the defendant might pay on the mortgages on the farm and the taxes.

"The defendant claims that the complainant was anxious to go west, and take with him $10,000, and made the arrangement as an absolute sale, and that there was no understanding or agreement in reference to a reconveyance of the property, nor was it intended as security.

"The complainant went west, and he returned in about two months, and he claims that he asked for a reconveyance of the property, and that the defendant told him that he had been put to a good deal of trouble, and he would require a bond of indemnity to protect him against any claims the complainant's wife might make. The complainant then says that he offered to allow him $2,000

for the trouble he had had and assistance he had rendered, but that he declined to reconvey. The complainant also claims that in 1884 he again requested a conveyance of the farm, and was refused.

"The defendant says that never from the time the conveyance was made until the beginning of this suit was any claim ever made by the complainant that he was entitled to a reconveyance, nor did he claim any interest in the property; that in 1884, after the complainant had lost some money in the West, he claimed he had sold the farm too cheap, and desired the defendant to convey him a house and lot in East Saginaw to assist him in business, which defendant declined to do.

"Upon a review of the evidence and an examination of the legal questions raised, we are of the opinion that this is not a case where the law in reference to dealings between an attorney and his client is applicable. The defendant, Wisner, was out of practice. He was a business man. His advice to the complainant was of a friendly character, upon subjects connected with business and social matters mainly. He was a confidential adviser, the complainant, Etheridge, having confidence in his superior information.

"It is well settled that a deed absolute on its face may by parol be shown to be a mortgage, and the parol understanding given effect.

"The complainant's case rests entirely on his own unsupported testimony, and we are not convinced by his testimony that the defendant understood the matter as he claims in his testimony the complainant understood it; but he is squarely contradicted by the defendant, and the defendant's view is supported by corroborating facts and circumstances.

"The year 1878 was a year of depression in real estate. Money was scarce, and was loaned at a high rate of interest. At such a time the complainant sought to dispose of his property, and convert it into money. He had paid $11,500 for the Eagle block, and he had bought the farm in a trade, paying $7,000 in money and the house in East Saginaw; and the farm, exclusive of the personal property, may be said to have cost him $10,000. The small parcel on Cass street was worth about $700 to $800. To convert this property into ready cash at such a time would necessarily require some sacrifice. The complainant evidently expected this, as he voluntarily

sold the Eagle block for $8,000, that cost him $11,500, although it was paying a good rental and was in a desirable location. He makes no question about the sale in this suit.

" The evidence in this case shows that the complainant paid a fancy price for the farm. The man of whom he bought it, Mr. Eggert, says so substantially. He says all he could make out of the farm was his living and $300 per year; that for farming it was worth only $75 per acre. Mr. J. P. Allison placed the value of the farm in 1878 at $5,000; Mr. Penoyer the same; Dr. Robinson, Mr. Phillips, Mr. Benjamin, and others place its value at varying figures; the highest being from $80 to $100 per acre, the lowest $75 per acre. The average of the testimony is that it was worth $6,000. It was not near enough to the city ever to become an addition to it. It was a piece of land that required the expenditure of a considerable sum of money in the way of drainage and outbuildings to make it effective as a farm.

" The defendant, then, received the conveyance of two pieces of property which may be said at the time to have been worth as follows: The farm, $6,000; the property on Cass street, $700. The complainant received $2,000, the note of defendant, which was paid; his mortgages were taken care of, to the extent of $2,000; and his wife was paid the sum of $1,542.

" There is some dispute as to the value of the personal property that went with the deed, but it would seem that it was old machinery upon the premises, and was worth perhaps $300, which defendant received. In addition there was other personal property, a span of horses, and a wagon, for which the defendant paid $300 in addition to the sum that was named. This was practically all cash received by the complainant. The property on Cass street was afterwards sold for $700 by the defendant, and it was about what it was worth at the sale. These figures would show that the defendant had paid for this property nearly its full value, if not about its full value, estimating the farm at the figures of Allison and Penoyer; and, estimating the farm at the figures placed by other parties, there was a margin, but not a very large one, in favor of the defendant. There was less sacrifice in the sale of the farm, considering its value and what it produced, considerably less, than in the sale of the Eagle block.

"The complainant in his testimony, while claiming that this deed was given as security, says that no time when he would return from the West was mentioned; that no time when he should redeem was mentioned between the parties; no rate of interest agreed upon; no provision made for working the farm or paying the taxes that might accrue; no talk or understanding about any improvements to be made upon the farm, or to what extent. In fact, the conversation which usually occurs between parties where there is a parol agreement in reference to an absolute deed, it would seem, from the complainant's own testimony, did not occur in this case. He simply expected that the defendant would pay the taxes, work the farm, and whenever he pleased, in one year or ten years, he might return, pay up, and receive a deed. His conversations previous to going away, and shortly after the sale, with several parties who testified in this case, show that he repeatedly stated that he had sold the farm to the defendant; that he was going west to seek his fortune; and gave the impression that he was not to return. The complainant offered no evidence of the value of the farm in 1878, in opposition to the testimony of the defendant.

"The complainant says that when he returned in July, 1878, and asked for a reconveyance, he made no inquiry as to the meaning or purport of a bond of indemnity; he consulted with no one as to his legal rights, but says the bond of indemnity troubled him, and, as the defendant was a lawyer, said 'he was afraid to tackle him.' The testimony shows that he lived at defendant's house as a guest, both before and after the alleged request; and he admits that he received after the request the full amount of the $2,000 demand note, as he says, reluctantly, while the evidence of those present at the payment would show that no objection to its receipt was made at the time.

"The testimony further shows that afterwards, and during the same year, the complainant purchased a farm of 13 acres and a hotel in the vicinity of the farm in question; and that he consulted with the defendant in regard to it, lived near him for several months, and saw him make valuable improvements upon the farm, without raising any question in regard to it; that he subsequently went west, and was unsuccessful, and the defendant loaned him money to assist him; and on his final return to Saginaw he engaged in business by borrowing $1,000 of

defendant, which he paid prior to bringing this suit.

"The complainant has waited many years before asserting a right to this property, and his laches in this respect do not entitle his case to a favorable consideration. The house upon the property in the mean time has been entirely remodeled. New buildings have been erected, and other valuable improvements have been made upon the property, and it is enhanced in value.

"We are of the view, however, that the complainant has failed to establish an agreement between himself and the defendant that the deed of March 6, 1878, was to be held or treated as security.. And we are of the opinion that, as the complainant was then situated, he desired to sell his property absolutely, and secure for himself $10,000, have his wife paid, and his mortgage indebtedness besides, from the proceeds, and remove to the West to invest his money and seek a new home. To accomplish this, he made the conveyance of March 6, 1878, not intending or expecting at the time a reconveyance of it from the defendant, and not intending to redeem it, being entirely willing that his old-time friend should make something by the purchase, in view of the assistance he·had rendered to him.

"The bill may be dismissed, with costs.

### "By JUDGE EDGET.

"I sat with Judge Gage upon the hearing of this case, the submission of the testimony, and the argument, and I concur entirely in the general results to which he comes."

We have carefully read the record in this case, and fully concur with the learned circuit judges of the Saginaw circuit that the complainant has wholly failed to establish an agreement between himself and defendant that the deed of March 6, 1878, was to be held or treated as a security. The general rule is as stated by Mr. Justice GRAVES in *Tilden v. Streeter*, 45 Mich. 540, that—

"A party seeking to modify the operation of the instrument, and prove himself entitled, against the terms of his own deed, to an equity of redemption, is not only bound to make out that the transaction was, ·in truth and justice, nothing more than the giving of security,

but is required to do so by a force of evidence sufficient to command the unhesitating assent of every reasonable mind."

But we need not in the present case invoke that rule. The evidence is overwhelming to sustain the defendant in his contention. We are unable to discover in the record presented a single act of the defendant tending to show that he has not treated the complainant at all times in the most fair and equitable manner, and the complainant's conduct certainly does not show that he ever regarded the transaction as a mere security, whatever he may now testify that he said to the defendant to the contrary.

. It is one thing to be acquitted of such a fraud as is charged against the defendant because the evidence has not sufficient weight to convince the reasonable mind, and quite another thing to be acquitted of the fraud because the evidence satisfies the mind beyond all doubt that the party charged is entirely innocent of the offense. We believe the defendant has been wrongfully charged, and that he is entitled upon this record to be fully acquitted of such offense, at least so far as our views, from a careful examination of the record, may acquit him of it.

The decree of the court below dismissing complainant's bill will be affirmed, with costs.

The other Justices concurred.