### ABBOTT v. GRUNER.

DEEDS—AGREEMENT TO RECONVEY.

    If an absolute conveyance be made and accepted in payment of an existing debt, and not merely as security for it, an agreement by the grantee to reconvey the land to the grantor upon receiving a certain sum within a specified time does not create a mortgage, but a conditional sale; and the grantee holds the premises subject only to the right of the grantor to demand a reconveyance according to the terms of the agreement.

Appeal from Bay; Maxwell, J. Submitted June 6, 1899. Decided September 12, 1899.

Bill by Fred M. Abbott against Leonhard Gruner and Caroline P. Ellis, executors of the last will and testament of Joseph J. Ellis, deceased, to have a deed declared to be a mortgage. From a decree for complainant, defendants appeal. Reversed.

*Merrie H. Abbott* and *Charles S. Abbott* (*B. M. Thompson*, of counsel), for complainant.

*F. L. Snodgrass* (*Noah W. Cheever*, of counsel), for defendants.

LONG, J. This bill was filed to have an absolute deed declared to be an equitable mortgage. The bill called for an answer under oath. Defendants filed a sworn answer, denying all the material allegations in the bill, and claiming the benefit of a cross-bill.

It appears that Austin Abbott and wife, on July 6, 1886, gave a mortgage to Joseph J. Ellis, for $3,500, on lots 9, 10, and 12, and a part of lot 11, of R. H. Weideman & Co.'s First addition to the village of West Branch. The mortgage was to be paid, $1,000 in three years, $1,000

in four years, and $1,500 in five years, with interest at 10 per cent. per annum. The part of lot 11 mortgaged was thereafter sold, and on July 6, 1888, the mortgage had been paid down to $3,000. From this time to November 11, 1891, no payments had been made. In 1886, after this mortgage was given, Joseph J. Ellis died testate, and the defendants, Gruner and Ellis, were appointed executors of his will. Gruner had the principal charge of the business, and sole charge of the matters connected with this mortgage. Ellis, in his lifetime, had been in the banking business, in partnership with one M. H. French, at West Branch. After the decease of Ellis, Mr. Gruner employed French to collect interest and principal of mortgages in that part of the State, Gruner living at Ann Arbor. In November, 1891, defendants, as executors of Ellis, commenced proceedings in chancery for the foreclosure of this mortgage, and a decree was entered on October 19, 1892, by which there was found to be due upon it $4,626.47, and, no appeal being taken, the decree became absolute. The sale of the premises was advertised under the decree for January 7, 1893. On the day the sale was to take place, Judge Sharpe, who was solicitor for the defendants here in the foreclosure proceedings, entered into an agreement with Austin Abbott and wife, by which they (the Abbotts) were to make an absolute deed of the mortgaged premises to the estate of Ellis, to take the place of the commissioner's deed on foreclosure of the premises. The deed was made, and delivered to Judge Sharpe, as attorney for the executors, and was placed by him in the possession of the register of deeds of that county, with written directions from Judge Sharpe not to place the same upon record for 60 days unless some other paper should be offered for record to the register which might affect the title to the premises, and in such event this deed was to be placed upon record.

It is contended by defendants that subsequently it was agreed that, in case the Abbotts paid to the executors $4,224.30 within the 60 days from the date of the deed,

then said executors should reconvey the premises to the Abbotts. Defendants also claim that it was also agreed that this deed should not be received as a mortgage security, but should be an absolute deed, to take the place of the commissioner's deed on foreclosure, and that the Abbotts should have the right to repurchase the premises by paying within 60 days the amount agreed upon, to wit, $4,224.30. The Abbotts not having paid the money stipulated to be paid, the deed was placed upon record on April 10, 1893, and, as soon as recorded, was taken by Mr. French, and mailed to defendant Gruner. It is also contended by the defendants that, from that time up to the time of filing this bill, neither Austin Abbott, Mary J. Abbott, nor their grantees ever made any claim that the deed was a mortgage, or that it was intended by the parties to be treated as security; that, from the time of the execution of the deed up to the time of filing the bill in this cause, Austin Abbott and his wife have occupied portions of these premises as tenants under said executors, under verbal or written leases, and have paid rent therefor; that during all that time the defendants have been in full and complete possession of the premises, have made repairs thereon, paid the taxes on the lands, and leased and received the rents therefor.

The complainant claim sthat, shortly before the premises were to be sold under the foreclosure, Mr. Abbott began negotiations for a new loan, and that, the day before the sale was to be made, he received a promise of a loan from a Detroit bank, but, not having time to perfect it, that Austin Abbott and his son Charles went to French and Sharpe, disclosed the fact of their intention to make the new loan, and asked a little further time in which to redeem; that at this time a message was sent to defendant Gruner, and the answer came back to French as follows: "January 6, 1893. Adjourn Abbott sale for 30 days. Publish usual adjournment notice. Inform Abbott. L. Gruner;" that the receipt of this telegram was kept from the Abbotts, and they were led to believe

that, owing to the expense of advertising, the only way in which further leniency could be obtained was by the execution of the deed in question, subject, however, to the right of the Abbotts to make a loan on the property and pay off the indebtedness, upon which the deed was to be returned; that the deed was not to be recorded, but handed to the register of deeds with the written instructions from Judge Sharpe, and if the loan was made, and the money paid over, the deed was to be returned without recording; that in the meantime the Abbotts were to remain in possession, and, if they could not redeem within the time, they were to surrender to the estate the rents and profits of the premises, the same to be applied upon the mortgage indebtedness; and that it was distinctly understood that the estate did not want the premises under the deed, but that the Abbotts might redeem at any time they could by paying off the indebtedness.

It appears that on March 14, 1893,—that is, two months and seven days after the deed in question was given,— the Abbotts conveyed the premises by deed to Henry K. Abbott. It is claimed by complainant that, shortly after this deed was made, Henry K. Abbott, accompanied by his brother (Austin Abbott) and Mr. French, went to Detroit, to see what could be done about raising the money to pay off the amount due the estate. They failed to secure it. It is also claimed that several subsequent attempts were made to raise the money for that purpose, but, owing to hard times, they were unable to obtain it. On February 21, 1898, Henry K. Abbott deeded the premises to Fred M. Abbott, the complainant here.

The case was heard below on pleadings and proofs, and a decree was made finding the conveyance was a mortgage, and referring the cause to a commissioner for an accounting. Defendants appeal.

It is contended:

1. That the executors had no power or authority to authorize or make the agreement claimed by complainant.

2. That the executors never made the agreement claimed.

3. That the agreement actually made by Judge Sharpe was that the deed should be absolute, and that the Abbotts should have the right to repurchase the premises within 60 days upon payment of the sum agreed upon.

4. That the allegations of complainant's bill, and the proofs, show that, since the execution of the deed, Austin and Mary J. Abbott have been tenants of the premises under the defendant executors, and that neither they nor their grantees can dispute their landlords' title.

Mrs. Mary J. Abbott was called as a witness for the complainant. She testified that she understood, when the deed was given, that they had a right to redeem from it, and that at that time her husband was negotiating for a loan in Detroit; that, if he failed to get this loan, the estate was to collect the rents and profits; that she did not have any talk with Judge Sharpe about it, nor with Mr. Gruner, the executor. She was asked:

" Did you understand it from Mr. French?

"*A.* I don't remember; it seems as though— I think that was the way I understood it, from Mr. French and Mr. Abbott.

"*The Court:* You say you think you did have a talk with Mr. French?

"*A.* I don't remember exactly as to that. I left that to my agent and Mr. Abbott, and I talked of it before this mortgage was given, and I understood from him, and also from my other agents, that this mortgage was given as security for the old mortgage."

On her cross-examination her attention was called to certain leases made by the Ellis estate to Austin Abbott and others, which were made in June, 1893, December, 1894, and November, 1897. She was asked:

"Were you not in possession of this property under these three leases from the time the leases were made up to the present time?

"*A.* I presume so.

"*Q.* And you have paid rent?

"*A.* Yes.

"*Q.* Under these leases?

"*A.* Yes.

"*Q.* From the time they were executed up to the present time?

"*A.* Yes."

Mrs. Abbott's attention being again called by her counsel to the understanding about the deed, she was asked:

"When this mortgage deed was presented to you for your execution, do you remember whether, as a matter of fact, it was Mr. French or Mr. Abbott that explained to you that you could redeem under this?

"*A.* It was Mr. Abbott.    *    *    *

"*Q.* Mr. Abbott told you this, then, in Mr. French's presence, did he not?

"*A.* I think so, as I remember."

On cross-examination she was asked:

"Did he tell you that in Mr. French's presence?

"*A.* I think he did.

"*Q.* What did Mr. French say, if anything?

"*A.* I don't remember.

"*Q.* That is your answer, is it,—that you don't remember?

"*A.* I don't remember."

Judge Sharpe was called as a witness for complainant, and was examined and cross-examined at great length as to what was said and done at the time the deed was given. He was asked by counsel for complainant:

"*Q.* And he was going to get that loan with the idea of redeeming the property?

"*A.* It is perhaps a play upon words whether you say 'redeem' or 'purchase back.'   My understanding is that he was to have the option of purchasing it back at a reduced amount, instead of a redemption.    *    *    *   You seek to make me say he had a right to redeem.   I did not so understand it.    *    *    *

"*Q.* At the same time you still were willing Mr. Abbott should have the right to redeem the property?

"*A.* Well, no.   I might just explain it further that my recollection is that Mr. Abbott's claim was that, if we went on to the sale, and the deed was recorded, made by the commissioner after foreclosure, that that would prejudice his right in borrowing money upon the property in case he desired to purchase it back, and that in that way

the deed came to be given, instead of us procuring a deed through the foreclosure sale."

On cross-examination, witness stated:

"*Q.* Didn't you understand that this deed conveyed the absolute estate in fee to the estate of Ellis?

"*A.* I did.

"*Q.* In case the Abbotts should pay the amount that you figured up — What do you understand that you were to do after that, in case they should succeed in borrowing that money, and should pay it,—what were you to do?

"*A.* I do not recollect whether the arrangement was that the deed was to be recorded, and one made back by the executors, or whether that deed was to be delivered back to them; but, what was to be done, they were to get the title back that was conveyed by the deed. * * *

"*Q.* Was it then the intention to reconvey it upon the amount stated?

"*A.* I so understood it.

"*Q.* Do you call it a reconveyance when you return a man's deed to him?

"*A.* That would be the effect of it. * * * I don't know whether it was spoken of as to whether a conveyance should be made by the executors or the deed handed back."

The witness further testified that all the authority he had to make this arrangement was from Mr. French. Mr. French was called as a witness, and testified that he had no authority to make the arrangement to keep the deed from record; that all he undertook to do was to help the Abbotts out, and, in case they got the loan, he was to go to Ann Arbor, and ask the Ellis estate to deed the property; that he never understood that there was any arrangement except to get the property back in case the Abbotts raised the money; that he left the matter with Judge Sharpe, who told him that he had taken an absolute deed to the property, and had left the memorandum with the register of deeds to withhold the recording of the deed to see if they could make a loan.

We are satisfied from the evidence in the case that it was the understanding between the parties that the convey-

ance was to operate as an absolute conveyance, with the option to Mr. Abbott to repurchase. It is stated in *Tilden* v. *Streeter*, 45 Mich. 540, that:

"The great current of authority is distinct in holding that the party thus seeking to modify the operation of the instrument, and prove himself entitled, against the terms of his own deed, to an equity of redemption, is not only bound to make out that the transaction was in truth and justice nothing more than the giving of security, but is required to do so by a force of evidence sufficient to command the unhesitating assent of every reasonable mind."

That principle was quoted with approval in *Etheridge* v. *Wisner*, 86 Mich. 173.

There is no positive testimony in the case that such an arrangement as claimed by complainant was made, but, on the contrary, it is shown very conclusively by the testimony of Judge Sharpe and Mr. French that all the arrangement amounted to was that the Abbotts should have the privilege of repurchase. It appears that, soon after the time elapsed in which the deed was withheld from record, the Abbotts took leases of the premises from the estate, and paid rent therefor. Three of these leases were in writing, and Mrs. Abbott confesses that the parties occupied under them, and paid rent. The transaction was closed in March, 1893. From that time forward, the defendants have been in possession, claiming absolute title, making large improvements upon the property, with the knowledge of the Abbotts, and not until about the time this bill was filed, in 1898, did they claim any interest in the premises. The rule is well stated in Jones on Mortgages, at section 265, as follows:

"If an absolute conveyance be made and accepted in payment of an existing debt, and not merely as security for it, an agreement by the grantee to reconvey the land to the grantor upon receiving a certain sum within a specified time does not create a mortgage, but a conditional sale; and the grantee holds the premises subject only to the right of the grantor to demand a reconveyance according to the terms of the agreement."

Some stress is laid upon the fact that Judge Sharpe, after the deed in controversy was made, drew the deed from Austin Abbott and wife to Henry K. Abbott for the purpose of conveying title to Henry K. Under the arrangement made, we think this fact has but little weight, if any, in determining the character of the first deed. Judge Sharpe and Mr. French were evidently desirous that the Abbotts should have the fullest opportunity to repurchase the land. They had taken this deed in place and stead of the commissioner's deed, so that the land should not be incumbered by that deed, and had withheld from the record the deed given by the Abbotts, so that they might more readily make a loan upon the land, and then, as Mr. French says, he should go to Ann Arbor, and induce the executors to let the Abbotts have the land back; in other words, they both evidently did what they could to assist the Abbotts in making the repurchase.

Upon the whole record we are satisfied that the complainant has not made out the case stated by his bill. We need not discuss the want of power and authority in Judge Sharpe or Mr. French to make the arrangement claimed. The court below was in error in finding that the conveyance was a mortgage. The decree must be reversed, and a decree entered here dismissing complainant's bill, with costs of both courts.

The other Justices concurred.