RUBENSTINE v. POWERS.

1. MORTGAGES—DEED AS MORTGAGE—INTENTION—PROOFS.

A deed of lands, absolute in form, with general warranty of title, and an agreement by the vendee to reconvey to the vendor on a third person, upon his payment of a fixed sum within a specified time, do not of themselves constitute a mortgage; nor will they be held to operate as a mortgage unless it is clearly shown, either by parol evidence or by the attendant circumstances, such as the condition and relation of the parties, or gross inadequacy of price, to have been intended by the parties as a security for a loan or an existing debt.

2. SAME—BURDEN OF PROOF—EVIDENCE.

The burden of proving that an absolute conveyance, unaccompanied by any written stipulation for reconveyance, was intended to operate as a mortgage, rests on the party alleging that intention.

On the question of parol evidence that a written instrument which on its face imports a complete transfer of a legal or equitable estate or interest in property was intended to operate as a mortgage, see comprehensive note in L. R. A. 1916B, 18.

3. SAME—VENDOR AND PURCHASER—BURDEN OF PROOF.
    Upon the whole record, *held*, that cross-plaintiff has failed
        to discharge the burden of proof resting upon him to show
        that a conveyance absolute upon its face with contract
        from the vendee to him amounted to a mortgage.

4. VENDOR AND PURCHASER—FORFEITURE—ACCEPTANCE OF PAYMENT
    DUE WAIVER OF FORFEITURE.
    Acceptance by the vendor in a land contract of the amount
        due subsequent to service of notice of forfeiture upon the
        vendees operated as a waiver of said notice.

5. SAME—NOTICE—ESTOPPEL.
    Where the holder of the legal title to land sold upon con-
        tract with permission to his vendee to plat and sell lots,
        signed with his vendee the contract with plaintiffs for
        certain of said lots, he is estopped to deny the authority
        of said vendee to sell and accept payments thereon.

6. SAME—EQUITY.
    Where the contract with plaintiffs included 3 other lots
        besides the 11 lots in which cross-plaintiff's interest was
        forfeited, they being of substantially equal value, the
        amount received in payment therefor should be divided
        three-fourteenths to cross-plaintiff and eleven-fourteenths
        to defendant.

7. SAME—SPECIFIC PERFORMANCE.
    The decree of the court below awarding specific perform-
        ance to plaintiffs is affirmed, the time for payment being
        extended to 60 days from the filing of the opinion in
        this court, the deed to be signed by both cross-plaintiff
        and defendant.

8. SAME—POSSESSION—WRITS OF RESTITUTION—APPLICABILITY OF
    STATUTE.
    There being no question of possession involved, *held*, that
        Act No. 243, Pub. Acts 1917, amending section 13253, 3
        Comp. Laws 1915, relating to writs of restitution, has
        no application to this case.

Appeal from Genesee; Brennan (Fred W.), J. Sub-
mitted April 25, 1921.    (Docket No. 42.)    Decided
October 3, 1921.

Bill by Philip Rubenstine and others against Walter W. Powers and Neil J. Berston for the specific performance of land contracts. Defendant Powers filed a cross-bill against defendant Berston to have a certain deed and contract declared to be a mortgage. From a decree for plaintiffs and defendant Powers, defendant Berston appeals. Reversed, and cross-bill dismissed.

*Parker & Wilber,* for plaintiffs.

*George W. Cook,* for defendant Powers.

*Carton, Roberts & Stewart,* for defendant Berston.

STONE, J.   The principal controversy in this case is between the defendants Powers and Berston, and arises under the cross-bill filed by defendant Powers on November 26, 1919, in which he asks for certain relief from defendant Berston.   The facts are somewhat involved, and the right of Powers to file a cross-bill is questioned by defendant Berston.   The history of the several transactions between the parties will be stated.

Prior to December 9, 1916, William M. Donnelly and others were the owners of certain described premises, consisting of a farm of about 80 acres in the township of Mt. Morris, county of Genesee, Michigan, which premises were outside the city limits of the city of Flint.   On September 28, 1916, said William M. Donnelly and others made and delivered to John Thornton and Walter W. Powers a 60-day option, in writing, to purchase said real estate at the price of $31,600. This option was, on November 27, 1916, extended to December 9, 1916.   On December 8, 1916, said Powers, being without means and unable to take up said option, made an arrangement with defendant Berston by which the property should be deeded by the Donnellys

direct to Berston who was to give back a mortgage to the Donnellys for $15,600, and pay the balance of $16,000 in cash to the Donnellys. Berston was to make and execute to Powers a land contract, by the terms of which Powers was to pay Berston $18,000 on or before February 8, 1917, and was to assume and pay the mortgage given by Berston to the Donnellys. It will be noted that the consideration provided for in said contract was $2,000 more than the amount paid by Berston to the Donnellys. For the purpose of securing the payment of said $18,000 and assuming and paying said mortgage, Powers agreed to assign to Berston, as collateral security, his equity in 66 lots in Moore & Veale's subdivision in Greenfield township, Wayne county, which had been sold upon contracts, upon which contracts there remained unpaid the sum of $25,034.98. Powers had purchased this property upon contract for $20,000, upon which there had been paid $8,040. This contract was also to be assigned to Berston. Pursuant to this arrangement the Donnellys deeded direct to Berston the property described in the option, on December 9, 1916. Berston gave to Donnelly a note for $15,600 secured by real estate mortgage upon the same property, payable 3 years from date, with interest at 6 per cent. per annum, payable semi-annually, and on the same day Powers made and delivered to Berston as collateral security for the payment of said $18,000, and assumption and payment of said mortgage, an assignment of his equity in the 66 lots above referred to. To this assignment was attached a list of the lots sold upon contract, the purchasers' names, the price for which the lots were sold, and the balance due and unpaid upon the contracts. These contracts were delivered to Berston. At whose suggestion this assignment was made is in dispute, Powers claiming that Berston requested it, and Berston claiming that Powers proposed in the

first instance to make it as collateral security to the contract.   On December 8, 1916, a land contract for $33,600 was made and signed by both Berston and Powers, by the terms of which Berston agreed to convey said real estate to Powers upon payment to him of $18,000 on or before February 8, 1917.   This contract provided for the payment of the balance of the purchase price ($15,600) by assuming the payment of the Donnelly mortgage.   It did not bear interest, and contained the usual forfeiture clause, and gave Powers the right to the possession of the premises.   This contract was delivered the following day, at the same time the deed, mortgage and collateral assignment were delivered.

Not being able to raise the $18,000, Powers obtained a verbal extension for 30 days.   On March 10, 1917, Powers, being unable still to raise the $18,000 then due on the land contract of December 8, 1916, had an interview with Berston which resulted in the making of a new contract in the place and stead of the former one.   By the terms of this contract Berston agreed to convey the same property to Powers for and in consideration of $47,500, of which Powers was to pay $5,000 in cash, $2,000 or more on or before the 10th day of March, 1918, $4,000 or more on or before March 10, 1919, $7,000 or more on or before March 10, 1920, $7,000 or more on or before March 10, 1921, and the balance of $6,900 on or before March 10, 1922, Powers also agreeing to assume the Donnelly mortgage of $15,600, and to pay the interest on all unpaid balances on said contract, at the rate of 6 per cent. per annum payable annually.   The contract also provided that Powers should have the privilege of subdividing said property, and dealing with it in any way he saw fit. Berston agreed to sign whatever plat or plats of the property that were laid out.   The contract further provided that:

"In case it is desired to pay up in full upon any lot or lots of the said plats, the said first party agrees upon request to release such lots from this contract, and to give warranty deeds therefor under the following conditions, viz.: Release price shall be fixed at $67 per lot in the beginning, and the basis of lots 50 x 100 feet, or six lots to the acre, and shall be reduced by $2 for every $1,000 paid on principal under this contract. It is mutually understood and agreed that the sums paid from time to time to make up the release price for any lots released shall be credited on the next succeeding payment on this contract."

It was provided that Powers should have possession of the property. The $5,000 was paid by Powers to Berston, and Powers also paid the first installment of interest on the Donnelly mortgage. The assignment of contracts for the 66 lots was surrendered to Powers before or at the time of the making of the new contract.

A plat was prepared by Powers, dividing the property into 480 lots. No development work was done except that Powers had the streets plowed, some trees cut and cleared away, and he put up a sign on the front of the property, giving the name of the plat with Powers' name thereon. The plat was not recorded. About 20 lots were sold on contract, and 3 deeds of lots were made. Just how much Powers realized out of these sales does not appear, but it is claimed by Berston that Powers sold timber and collected substantial amounts from the 3 lots deeded and the 20 lots sold on contract, sufficient to reimburse him. Eleven of these lots were sold to the plaintiffs on contract dated January 5, 1917. The consideration was $5,535. Of this $285.71 was paid upon the execution of the contract, and the balance was made payable in installments of $300 or more each, to be paid on the 5th days of May, September and January in each year, with interest at 6 per cent. per annum, commenc-

ing January 5, 1920.   This contract gave the vendees the right of possession, and was signed by the plaintiffs and by Powers and Berston, the name of the latter, however, not appearing in the body of the instrument.   Plaintiffs went into possession of the property, which was described by metes and bounds, and they planted potatoes thereon for two or more years.

This contract also included three lots in another plat put on by Powers, and in which Berston had no interest.   Plaintiffs paid $300 on May 5, 1917, and made no further payments until May 26, 1919, when they paid $1,873, claiming that to be the amount then due.   Before this last sum was paid Powers caused notice of forfeiture to be served on all of the plaintiffs. This notice was served about the 22d day of May, 1919.   The payment of $1,873 was accepted by Powers after service of this notice.   Later notice of forfeiture signed by Berston was served upon plaintiffs.   No proceedings were instituted by either Powers or Berston against the plaintiffs to get possession of the 11 lots described in plaintiffs' contract.   About a week before plaintiffs began this suit they made a tender, or attempted to make a tender of the balance due upon this contract to both Powers and Berston.

Powers having made default in the payment of the $2,000 due March 10, 1918, Berston caused to be served upon him a notice of forfeiture.   This notice is dated July 30, 1918.   It contained this clause:

"Now, therefore, notice is hereby given that if said non-performance of the conditions of said contract, or any of them, shall remain in default for a period of sixty days on and after this date, Neil J. Berston, Jr., party of the first part in said above named contract, will declare the said contract void, and without further force and effect."

On or about the 15th day of October, 1918, Powers

still being in default, Berston caused to be served upon him a second notice of forfeiture in which the contract was declared forfeited and void and immediate possession of said premises was demanded. This notice of forfeiture bears date October 14, 1918, and was signed by Berston. No suit or further proceedings were taken against Powers to obtain possession of the property. However, it appears that later Berston and those holding under him went into possession of the property, and so far as this record shows are now in possession thereof.

The bill of complaint herein was filed October 1, 1919. Both Powers and Berston were made defendants, and the bill prayed for specific performance of the contract of January 5, 1917. Powers, on November 26, 1919, filed his answer and cross-bill making Berston defendant to such cross-bill. Berston filed his answer to plaintiffs' bill of complaint, and later made a motion to dismiss the cross-bill of Powers, which motion was denied, and thereafter he filed his answer to said cross-bill. The case was heard upon the issue thus formed. Counsel for defendant Berston made a motion to dismiss the cross-bill of Powers upon the grounds, viz.:

(1) That it was in no way germane to the original bill.

(2) That it was an attempt by way of cross-bill to introduce into the case and excuse the default of Powers to the injury of Berston, and to place the entire burden upon the latter, wrongfully and without any fault upon his part, and was therefore without equity.

(3) For the reason that Powers was attempting to use a receipt by him of $1,873 paid by the plaintiffs to Powers in such manner as to have it work a waiver of the default on his part of his contract with Berston, which latter contract was no part of the litigation in the case, and which attempt was without equity and good conscience.

(4) For the reason that the cross-bill was not part of the material and relevant defense to said original bill, and raised no issue by its allegations in any way connected with the issues involved in the original bill.

The court below having denied this motion and testimony having been taken, and the case heard upon its merits, we are disposed to consider the merits of the case as presented to the court below. The court granted relief to Powers, and Berston has appealed.

It is the claim of cross-plaintiff Powers that this entire transaction was his deal; that the only interest Berston had in the matter was to advance the money for the payment to the Donnellys; that the title to the land was deeded to Berston direct upon Powers' orders, in order to secure Berston for the money advanced by him for Powers' benefit, and that therefore the whole proposition, viewed from every standpoint, was a security deal; and that the only interest Berston had in the land was that of a mortgagee, and Powers invokes the doctrine of "once a mortgage always a mortgage." It is conceded by cross-plaintiff Powers that the deed from Donnellys to Berston and the contract from Berston to Powers appear to be absolute upon their face, but it is said that it has been held by this court many times that parol evidence is admissible to show that a deed absolute upon its face is in effect a mortgage, and numerous of our decisions are cited in support of this position.

It is the claim of Powers that the testimony and surrounding circumstances in the case show clearly that this was a security transaction. It is contended that a deed of conveyance of land absolute and unconditional on its face, but intended and understood by the parties to be merely a security for the payment of a debt, or the performance of some other condition, will be regarded and treated in equity as a mortgage, giving to the parties the relative rights and remedies

of mortgagor and mortgagee, and nothing more.   It is urged that it is a settled doctrine of equity that the form of a transaction will never preclude inquiry into its real nature, but that in all cases the intention of the parties must control irrespective of form; and consequently if a conveyance is made as a security for money, in whatever form the conveyance is made, or whatever cover may be used to disguise the transaction and hide its real character from others, as between the parties and as to all persons who have notice that the property is merely his collateral security, will be treated as a mortgage.   Citing cases in support of this position.

We think there is no question about the law as claimed by cross-plaintiff's counsel.   The only question is as to its applicability to the facts in this case. The true doctrine was well stated by Mr. Justice Lamar in the case of *Wallace* v. *Johnstone*, 129 U. S. 58 (9 Sup. Ct. 243).   In that case the jurist said:

"A deed of lands, absolute in form, with general warranty of title, and an agreement by the vendee to reconvey the property to the vendor or a third person, upon his payment of a fixed sum within a specified time, do not of themselves constitute a mortgage; nor will they be held to operate as a mortgage, unless it is clearly shown, either by parol evidence or by the attendant circumstances, such as the condition and relation of the parties, or gross inadequacy of price, to have been intended by the parties as a security for a loan or an existing debt."

So that the pertinent question here is:   Was the deed given to Berston as security, or was the transaction what it appeared upon its face to be?

Upon the question of the burden and standard of proof generally required, the rule is stated in 19 R. C. L. pp. 263, 264:

"The authorities are unanimously agreed that the burden of proving that an absolute conveyance, un-

accompanied by any written stipulation for reconveyance, was intended to operate as a mortgage, rests on the party alleging that intention.    Furthermore, evidence is not sufficient to establish such a conveyance to be a mere mortgage unless it is clear and unambiguous.    It must be, according to various statements, clear and convincing; clear and satisfactory; plain and convincing; clear, satisfactory, and conclusive; or clear, unequivocal, and convincing.    It will not suffice if composed of loose and random statements, or of facts and circumstances of doubtful import; but it must be of such a character as not to leave the nature of the transaction in reasonable doubt, though there is apparently dissent as to the proposition last stated.    The reason for the exaction of this high degree of proof is not far to seek.    If a less rigorous rule obtains, no man would be safe in taking a deed of property.    When it had doubled or trebled in value it would be only necessary for the grantor to bring witnesses to testify to an agreement that the deed was regarded as an equitable mortgage, to enable him, on payment of the purchase price and interest, to redeem."

It is urged by counsel for defendant Berston that the last sentence in the above paragraph is the keynote to the whole case, as in the instant case the property has enhanced in value many fold according to the testimony of a number of witnesses, and is now within the city limits, and in an improved district. The vital question in this case is, whether the cross-plaintiff has sustained the burden of establishing that this warranty deed, on its face, conveying the absolute title was, between the parties, a mortgage.

In the recent case of *Mintz* v. *Soule,* 182 Mich. 564, at page 571 (L. R. A. 1916B, 15), this court, speaking through Justice STEERE, said:

"It is well settled that such question is open to litigation, and the courts may so declare when the testimony impels to that conclusion.    In passing upon the proof courts favor written evidence, rather than oral, but are required to consider together the writings,

relations of the parties, surrounding facts and conditions generally, to arrive, if possible, at the real intent, understanding and agreement of the contracting parties."

In *Dalton* v. *Mertz,* 173 Mich. 153, at p. 156, Justice BIRD, speaking for this court, said:

"We are of the opinion that the complainant has failed to discharge the burden of proof which rested upon him in making out his case. The proof should be clear and convincing before an instrument which, on its face, purports to be an absolute conveyance is declared to be a mere security. For complainant's failure in this respect he must be denied relief."

We have given the record, briefs, and oral arguments in this case close attention, and we are of opinion that the cross-plaintiff has failed to discharge the burden of proof which rested upon him.

The rule to be applied may also be found in *Tilden* v. *Streeter,* 45 Mich. 533, at page 540, where Justice GRAVES said:

"The natural and *prima facie* effect of a conveyance expressing no condition, and regularly executed in the presence of attesting witnesses and duly acknowledged as an absolute deed, ought not to be controlled and qualified by oral evidence, and brought down to the effect due to a mere security, on a slight showing. The great current of authority is distinct in holding that the party thus seeking to modify the operation of the instrument and prove himself entitled against the terms of his own deed to an equity of redemption, is not only bound to make out that the transaction was in truth and justice nothing more than the giving of security, but is required to do so by force of evidence sufficient to command the unhesitating assent of every reasonable mind. Unless the testimony, say the Supreme Court of the United States, is entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. *Howland* v. *Blake,* 97 U. S. 624, 626," and citing many other cases.

See, also, *Etheridge* v. *Wisner*, 86 Mich 166, 173; *Abbott* v. *Gruner*, 121 Mich. 140, 147.

A diligent search of this record has not enabled us to find one sentence of documentary evidence going to show that the deed and land contracts in this case were intended to operate as security, in the sense in which the word is used in the authorities, or as a mortgage. The case of cross-plaintiff Powers is made to rest mainly upon his own uncorroborated testimony as to conversations had with Berston from time to time. A proper scrutiny of that testimony leads us to the conclusion that he has not sustained the burden cast upon him by the law. Much of that testimony is as consistent with the claim of the defendant Berston that the deed in this case was given as an absolute conveyance, with an ordinary land contract of sale of these premises, as with the other view of the case. Powers' conduct should be considered. From the time when the last notice of forfeiture was served upon him until the filing of his cross-bill, a period of more than one year, there is no evidence showing that Powers made any claim of any further rights in this property. He seems, by his conduct, to have acquiesced in the claim that his rights therein were forfeited "and he abandoned the proposition." He left the city and was in Muskegon much of the intervening time. During that time the value of this property had enhanced. Berston had paid off the Donnelly mortgage and had entered into contract relations with other parties in regard to the sale and disposition of the land, and he seems to have acted in perfect good faith toward Powers in all the dealings both before and subsequent to the service of notice of forfeiture. The lands had been syndicated, and the stock or shares sold; and to now decree the relief as prayed for by Powers in his cross-bill, there is evidence in the record, uncontradicted, to show that

Berston would suffer damages in more than $50,000. It certainly should require strong evidence under such circumstances to lead a court of equity to set aside the plain language of written documents, and hold that the parties did not mean what they said when they signed the instruments relating to dealing in real property. The testimony is too lengthy to be quoted at length. It has all been read and considered, and in our opinion relief by way of cross-bill should be denied and the cross-bill of cross-plaintiff Powers should be dismissed, with costs to defendant Berston.

Even if we were to hold that the deed and first land contract constituted a mortgage, there is much authority to the effect that the making of a new contract founded upon a new and adequate consideration, both fair and reasonable in its terms, and free from fraud and undue influence, would change the relation of the parties. The new contract of March 10, 1917, might be held to be such a contract.

In 2 Jones on Mortgages (7th Ed.), § 928, is found the following language:

"But where a bond of defeasance was executed by the grantee of land to the grantor, which was afterward surrendered, and a new bond given upon a consideration partly new, by which the grantee agreed to reconvey upon the payment within an additional time of a larger sum, it was held that the grantor thereby abandoned his title as mortgagor, and that the grantee became owner of the land in fee,"—citing cases.

See, also, section 252 of Jones and the many cases there cited.

But we adhere to the view that the deed and first contract constituted an absolute sale to Berston, and a contract to sell to Powers.

This brings us to the claim of the original plaintiffs in this suit. We have reached the conclusion that the

plaintiffs are entitled to a specific performance of their contract. It is true that they were in default at the time the notice of forfeiture was served upon them, but subsequent to that time they paid to the defendant Powers, and he accepted, the sum of $1,873 as the amount then due upon the contract. This sum was accepted by Powers as applying upon the contract. We think that this payment operated as a waiver of the notice of forfeiture. See *Waller* v. *Lieberman,* 214 Mich. 428.

It is true that the name of Berston does not appear in the body of that contract. He, however, signed the contract together with Powers. The reason for doing so seems to have been that the plaintiffs, being aware that the legal title to the property was in Berston, would not accept a contract that did not contain his signature. He seems to have signed it acquiescing in that view. He should be estopped from saying that Powers had not the right to give the contract when it was given, and to accept payments thereon. In his cross-bill Powers prays that the court direct the disposition of the $1,873 then in his possession. The same seems to have been paid to him, and to have had application, upon the entire contract, which contained three other lots besides the 11 lots involved in this suit. We gather from the testimony that all the lots in the contract were substantially of equal value. Three-fourteenths of the amount should be retained by Powers as applying upon the 3 lots outside the property in question. Eleven-fourteenths of that amount should be delivered to defendant Berston.

We affirm that portion of the decree below which awards specific performance to the plaintiffs upon the terms therein named, the time for payment being extended to 60 days from the filing of this opinion; the amount to be determined upon the basis of the decree below, and such deed to be signed by both Powers and

Berston.   The plaintiffs will recover their costs in this court, to be taxed against both Berston and Powers. The amount to be paid by plaintiffs will be paid three-fourteenths to Powers and eleven-fourteenths to Berston.

We do not think that Act No. 243 of the Public Acts of 1917, amending section 13253, 3 Comp. Laws 1915, relating to writs of restitution, has any application to this case.   The question of possession of the premises is not here involved, nor did the cross-bill tender any such issue.   It does not appear that any of the parties was actually living upon the land, or in actual occupancy thereof.

, The decree below, in all other respects than that relating to the claim of the plaintiffs, will be reversed and the cross-bill dismissed, with costs to defendant Berston as against cross-plaintiff Powers.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.