### MINTZ v. SOULE.

1. MORTGAGES—DEEDS.

A deed may be shown by parol to have been intended as a mortgage.

2. SAME—EVIDENCE—WRITTEN DOCUMENTS.

In passing upon the proofs in such cases, courts favor written evidence over oral testimony, but are required to consider the relations of the parties, surrounding circumstances, and gather therefrom, if possible, the real intent of the parties.

3. SAME—EVIDENCE.

Evidence *held* to warrant the trial court in determining upon pleadings and proofs that a deed and contract back to the vendor did not amount to a mortgage.

Appeal from Wayne; Mandell, J. Submitted June 18, 1914. (Docket No. 112.) Decided October 2, 1914.

Bill by Samuel Mintz against Elmer F. Soule and another for the foreclosure of a land contract. From a decree for complainant, defendants appeal. Affirmed.

*W. W. Wicker,* for complainant.

*Thomas Hislop,* for defendants.

STEERE, J.   This is an appeal from a decree for foreclosure of a certain land contract made by defendant Annie J. Hogan to defendant Elmer J. Soule, and by her assigned to complainant, Mintz, in connection with a conveyance to him of the property described in said contract, which consisted of two lots in a subdivision of a part of the Meldrum farm, in the city of Detroit, upon which were two double dwelling houses occupied by tenants.   Said executory contract now sought to be foreclosed bears date December 1, 1911.   By its terms defendant Hogan agreed to sell, and defendant Soule agreed to purchase, said property for the sum of $9,600, payable $1,600 down and the remaining $8,000 in installments of $150 each month thereafter, with interest at 6 per cent. per annum until due, and at 7 per cent. after due, payable semi-annually.   The instrument was in the customary form and phraseology of land contracts and contained the usual provisions as to payment of taxes, keeping property insured, surrender of possession in case of default, etc., on the part of the purchaser, and as to the seller's right in case of default to declare the contract void, retain all payments made, and retake possession.   The right to immediate possession of the premises was given to the purchaser, and it was expressly stipulated that neither party should assign his or her interest in said contract without the consent of the other.   The contract was executed in duplicate, and upon the copy produced in evidence by complainant was indorsed an assignment of defendant Hogan's interest therein to him, signed by her and dated December 5, 1911.   On the same date she conveyed said premises to complainant by a warranty deed, which was recorded in the office of the register of deeds on December 9, 1911.

The chief controversy in this litigation arises over the import of said deed.   Complainant contends that he bought the property outright for $7,000, subject to

the land contract, which should have resulted, with the $1,600 paid her by defendant Soule on said contract, in defendant Hogan's realizing in cash for said property the sum of $8,600; while the defendants claim that the deed and assignment of her interest in the land contract are, in fact and legal effect under the testimony, but a mortgage for $7,000, which she borrowed of complainant at that time.

Defendant Hogan had been the owner of this property for a considerable time prior to this transaction. Creditors had levied on it for a claim of $383.80, and it was incumbered by a mortgage to the Detroit Trust Company upon which there was due $3,592.70. She was desirous of selling the property, and to that end had talked to various parties on the subject, including a real estate agent by the name of Pike and defendant Soule. Negotiations initiated in those conversations culminated in the conveyances before mentioned. Soule testified he had knowledge that a motor company contemplated purchasing additional land in that locality, and he had reason to believe this property could be advantageously disposed of to said company, for which reason he thought it was a good buy, saying: "For I knew what I could get it for"; but that after paying the $1,600 down he found that the motor company deal in which he was "mixed up" was not going through, and he "did not care to put any further money in it."

After the tentative negotiations had approximated an understanding between defendants Soule and Hogan, the latter, because of past-due obligations which were pressing her, among other reasons, was desirous of making arrangements to realize more ready money from the sale than Soule was able to pay, and expressed a willingness to accept a less price for cash down. To that end Mr. Pike, the real estate agent whom she had consulted in regard to selling the prop-

erty, conferred with another real estate agent named
Fink, informing him that Mrs. Hogan had a party
who would buy the property for $9,600 on time, but
she was needing the money and willing to sell for cash
for $1,000 less; that it could be purchased for $7,000
subject to a land contract for $9,600, which she could
make with a party who would pay her $1,600 upon
such contract, leaving the balance to go to the pur-
chaser of the fee. Acting on this information, Fink
solicited complainant to take part in the transaction
and buy the property. After some consulation and
an examination of the property he became interested.
A general understanding was apparently reached be-
tween the parties prior to November 17, 1911, on
which date, as a preliminary to the conveyances al-
ready mentioned, a written contract was entered into
between defendant Hogan and complainant Mintz,
which recited that she had an opportunity to sell this
property on certain stated terms, which correspond
with those in the contract with Soule now sought to
be foreclosed; that she was "desirous, before signing
said land contract, of knowing and having in writing
an agreement from the party of the second part to
purchase said party of the first's interest in said land
contract"; and "therefore it is agreed between the
parties hereto. that the party of the first part agrees
to deed to said party of the second part, by proper
warranty deed, the above-described property, subject
to said land contract above described, and assign said
land contract to the party of the second part for the
sum of $7,000, and the party of the second part agrees
to purchase said property on the above terms and pay
therefor the sum of $7,000 in cash," etc. In making
this agreement of November 17, 1911, both parties
were accompanied by counsel. It was drafted by coun-
sel for defendant Hogan. Some discussion arose over
certain provisions in the proposed instrument, in which

complainant and his counsel suggested and insisted upon a few alterations and additions which were finally agreed to and inserted before the deal was closed and the instrument signed.. The following constitutes that portion of said agreement modified from the original draft, the portions in parentheses constituting the additions or alterations made before the parties signed:

"And the party of the first part agrees that of the $7,000 the sum of $600 is to be held (by the party of the second part) back until said party who is purchasing said property upon said land contract shall have paid to said party of the first part four payments on said land contract in addition to said first payment, amounting to $600, when second party will collect all subsequent payments on said land contract from said purchaser and (shall retain and keep said $600 and indorse such payments on said. contract, as of the date they are made). The said party of the second part is to pay to the party of the first part a deposit of $250 as evidence of good faith that he will carry out this contract, and the party of the first part, in case of defective title or failure to have the contract with the purchaser signed and completed as above set forth, agrees to return said deposit. * * * (First party to guarantee that said purchaser will pay said contract in full.)"

The $250 provided for as "evidence of good faith" on the part of Mintz was paid defendant Hogan by check dated November 17, 1911, the same date as the contract, and the matters foreshadowed in this agreement were later put in more definite form and consummated, so far as then possible, as follows: The Soule land contract with Mrs. Hogan was executed on December 1, 1911, and on December 5, 1911, she assigned the same to complainant, at the same time executing to him a warranty deed of the property, as before stated. He thereupon forthwith gave a mortgage on the property for $3,900 to a Detroit bank, with which, and other moneys raised by him, he paid

off her mortgage to the Detroit Trust Company and certain liens of her creditors on the property. On December 7, 1911, he paid her by check a sufficient amount to cover the balance of the $6,400 then due her, at the same time giving her an order on Soule for him to pay her the first four installments of $150 each as they fell due on his contract, to cover the $600 mentioned in the contract of November 17th, and concluded the transaction by paying to Fink $150, asked as a commission on the deal.

During the four succeeding months complainant credited the $600 which he had retained on the contract in installments of $150 each month as they fell due, and thereafter endeavored unsuccessfully to collect from Soule the payments which followed. To that end he obtained judgments against Soule in justice's court for two installments, but appeals were taken, and the cases were pending when this suit was heard.

In the meantime Soule had not only paid none of the four installments assigned by complainant to Mrs. Hogan, but by some arrangement with her did not take possession of the property as authorized by his contract, leaving her in possession and control to collect the rents, with him as one of her tenants, and on March 21, 1912, he profitably assigned to her his interest as vendee in the land contract complainant held by assignment from her as vendor, recovering from her, as she testified, all he had paid her on the contract, and $500 besides. Complainant claimed these transactions took place without his knowledge, and on May 10, 1912, having subsequently learned of them, he wrote Soule demanding immediate payment of the amount due on his contract, saying:

"Mrs. Hogan claims that you have assigned this contract to her. This assignment I must refuse to accept or consent to, as it was made without my knowledge

or consent, and I shall look to you for the performance of this contract."

Following further pressure by complainant to collect the amount due on the contract or get possession of the property, Mrs. Hogan asserted herself as the owner in possession, both by virtue of her original title and an assignment of Soule's contract, claiming the deed and assignment by her to complainant were but security for a loan, and that his claim for the amount due according to the terms of the contract was usurious. On June 27, 1912, she tendered to him and his attorney the $6,400 she had received, with interest, less the mortgage for $3,900, which complainant had placed upon the property after receiving her deed, designating the tender as "in full of all moneys advanced to me to enable me to make contract with Elmer S. Soule for purchase," etc., proposing to assume said mortgage and demanding "that you return to me an assignment of all interest therein and a deed of said lands, as you have no further interest in them." In reply complainant and his attorney offered to accept from her the amount due according to the terms of the Soule contract, but declined her tender as insufficient. No further payments were made, and defendant Hogan, standing upon her tender, remained in possession of the property, asserting ownership and collecting rents until this bill was filed on November 30, 1913. No personal decree was asked or granted against her, and she was given the right to redeem, or pay up the amount due, as assignee of Soule's interest as vendee. At the time of hearing, the property rented for $110 per month.

We need spend no time in considering the arguments and authorities cited by defendant's counsel in support of the contention that this was a usurious loan. If the deed was a mortgage in effect and the transaction was a loan, counsel's position is apparently well

taken. The only question calling for serious consideration is whether the defense has sustained the burden of establishing that this warranty deed, on its face conveying the absolute title, was, between the parties, but a mortgage to secure a loan.

It is well settled that such question is open to litigation, and the courts may so declare when the testimony impels to that conclusion. In passing upon the proof courts favor written evidence, rather than oral, but are required to consider together the writings, relations of the parties, surrounding facts and conditions generally, to arrive, if possible, at the real intent, understanding, and agreement of the contracting parties.

Defendants admit, and Mrs. Hogan states, that all preliminary talk and agreements were that the transaction would be a sale, and the papers were executed with that intent, but claims complainant just at the last refused to close the deal and buy the property, insisting that it must be a loan or nothing. She testified:

"The understanding was he was to buy, and at the last thing when coming to the settlement he said he changed his mind and did not want to buy it, but he would make a loan if I would guarantee the payment. He said he would loan $7,000, and to secure the loan I had to give him a deed; for he did not think a mortgage would be satisfactory. That is how we got into it. That was why he insisted on changing this original agreement. The original agreement was drawn up for him to buy the property outright, but at the last he was the one that proposed making a loan, and I was willing to sell then or now, and he was the one that suggested a loan, and there was no sale, and he knows it. * * * * And I said, 'I will have to buy it back, there is nothing else for me to do'; * * * and he said, 'I want to make the loan sooner than buy it. You have a right to pay it back any time you see fit, and so long as you pay interest'—.

"*Q.* (on cross-examination). Up to the time he got the deed he had said nothing about it being a loan?

"*A.* No, sir."

Defendant Soule testified:

"The conversation was that Mr. Mintz was to loan the money to Mrs. Hogan on this contract."

In direct contradiction of their testimony upon this point is that of Mintz, his attorney, Pike, and Fink, the last two apparently disinterested witnesses.

Mintz positively testified that he bought the property outright, that the deed and assignment were absolute, and he had no talk with Mrs. Hogan, or any one acting for her, prior to, or at the time of, closing the deal in relation to loaning her money. His attorney who assisted in the negotiations testified that he was present most of the time, that the negotiations and papers were upon the theory and basis of a sale and nothing was said about a loan.

Pike, who acted for Mrs. Hogan as real estate agent and with whom she consulted, testified that in his work and talk with her he was operating for a sale and never heard it claimed it was anything else.

Fink, the real estate agent acting for Mintz, testified they were negotiating a sale, not a loan, that he was present when the deed passed and all the time of the meeting when the deal was closed, that nothing was said about Mintz changing his mind and making a loan, and the first he heard of any such claim was in court.

Assuming these parties are all equally credible witnesses, the testimony would seem to preponderate against defendant's contention.

It is not shown that the value of this property was more than the amount advanced by Mintz when the deed was given—a material consideration when passing upon the question of whether a deed was in fact a mortgage. Fink, a real estate agent with years of experience in the city of Detroit and familiar with

values in that locality, testified that the fair, cash value of this property was from $7,500 to $8,000.

We find nothing in the writings conveying the idea that this was a loan. The deed and contract between the parties are to the contrary. The preliminary contract of November 17th states that one reason for making it was because Mrs. Hogan desired an agreement in writing that Mintz would purchase the property before she closed the contract with Soule. She was not then bound by any agreement of sale to him and did not execute his contract until December 1st.

Considering the surrounding circumstances, we find there were no previous business relations, friendship, or existing indebtedness between the parties leading up to and suggesting the likelihood of an oral agreement contrary to the legal import of the papers they signed. Before that time they were strangers, with no confidence established in each other. Both had counsel. She insisted on his paying down $250, "as evidence of good faith," and that it be in writing, while he was equally insistent on stringent security in writing signed by her that the land contract would be fully executed according to its terms. Under such conditions as are here disclosed, the writings executed by the parties are the safest and most reliable evidence of intent and agreement.

We discover none of the convincing elements in this case which sometimes move courts to construe instruments under seal as other than they purport to be, and agree with the trial court that the testimony, considered as a whole, not only fails to fairly show that this warranty deed was, in fact, only a mortgage, but is convincing to the contrary.

The decree is affirmed, with costs.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.