MISKINIS v. BEMENT.

1. MORTGAGES—DEEDS ABSOLUTE IN FORM.

A deed absolute on its face may be declared a mortgage, when given as security for a loan.

2. SAME—DEEDS—INTENT.

In determining whether an instrument is a deed or a mortgage the issue is solely one of fact and the controlling criterion is the intention of the parties.

3. SAME—ADVANCEMENT BY THIRD PARTIES TO EFFECT REDEMPTION —USURY.

Transaction whereby plaintiffs paid $16,613.86, the sum necessary to redeem from sale under decree of foreclosure by mortgagee's assignee, on day following expiration of period of redemption, except for additional six months allowed government of United States, holding a $6,400 junior lien, to redeem, after having reached an understanding with former mortgagor and present wife that she was to become a purchaser under a land contract with a term of 18 months for a bonus of $6,000; plaintiffs received quitclaim deeds from both former mortgagor and mortgagee; a supplemental consent decree was entered 8 days later in foreclosure proceedings adjudicating that former mortgagors surrendered possession to plaintiffs herein and further adjudging title to be in plaintiffs; and on following day an alleged contract of sale to defendant wife was executed for $22,665 with interest running from date plaintiffs made advancement and providing for payment of additional $6,000 to plaintiffs in case the Federal government redeemed, which payment was secured by a chattel mortgage on furniture located in the premises, that was executed by both defendants, *held,* to effect a usurious loan whereunder defendant husband was to redeem from former mortgagee's foreclosure with security for repayment of advancement made by plaintiffs.

4. JUDGMENT—RES JUDICATA—PARTIES—FORECLOSURE OF MORTGAGE.

A consent decree is not *res judicata* as to wife of owner of property being foreclosed where she was not a party to the foreclosure proceedings and was married to the owner after foreclosure proceedings had been commenced.

5. VENDOR AND PURCHASER—FORECLOSURE—MORTGAGES—PARTIES—
DISMISSAL OF BILL WITHOUT PREJUDICE.

Foreclosure of an instrument, in form a land contract, is not
available to parties named as vendors therein, who had mort-
gaged property to bank not a party to suit to foreclose where,
in such suit, defendants successfully maintain that transaction
resulting in execution of such instrument was a usurious loan,
as a complete determination of rights between the parties
could not be adjudicated; hence bill is dismissed without
prejudice to further proceedings to foreclose security given
for the loan.

Appeal from Oakland; Hartrick (George B.), J.
Submitted January 15, 1942. (Docket No. 86, Calen-
dar No. 41,885.) Decided April 6, 1942. Rehearing
denied May 18, 1942.

Bill by Joseph Miskinis and wife against Austin
F. Bement and wife to foreclose a land contract and
a chattel mortgage. Bill dismissed. Plaintiffs ap-
peal. Affirmed.

*Beckenstein & Beckenstein* (*Herbert J. Becken-
stein,* of counsel), for plaintiffs.

*Arnold F. Zeleznik,* for defendants.

NORTH, J. Late in December, 1940, defendant
Austin F. Bement was attempting to raise $16,613.86
to redeem his summer home in Oakland county from
a foreclosure sale. This sale had been held July 1,
1940. The mortgagee assignee, Collateral Liquida-
tion, Inc., of Detroit, purchased on foreclosure.
The foreclosure decree gave the United States of
America one year in which to redeem the property,
this being done for the purpose of giving the Federal
government an additional six months in which to re-
deem in order to protect a junior lien which it held
as security for payment of an income tax claim of
approximately $6,400 against defendant Austin F.

Bement. Prior to January 2, 1941, Bement had been unsuccessful in refinancing the mortgage obligation. He had enlisted the service of one Frank G. Yates who had done some tax work for him. Yates testified he saw some 50 people in his efforts in behalf of Bement without result prior to the time he contacted Joseph Beckenstein, a lawyer who represented plaintiffs. On January 2, 1941, plaintiffs agreed to come to the aid of defendants. The question now presented is whether plaintiffs in doing so merely redeemed the mortgage of Collateral Liquidation, Inc., for defendants on January 2, 1941, by means of a new loan, or whether plaintiffs actually bought the property from Collateral Liquidation, Inc., and later resold it to defendant's present wife, Evelyn Bement, on a land contract which, because of default, plaintiffs now seek to foreclose. The trial court held, as defendants claim, that plaintiffs merely redeemed for defendants' benefit and by the acts of the parties on January 2, 1941, and subsequent thereto a new but usurious loan by plaintiffs to defendants was consummated. Plaintiffs have appealed from the decree dismissing their bill of complaint.

On their face the written instruments in this case show a purchase of title by plaintiffs and a resale by them to defendant Evelyn Bement. However, notwithstanding the character of the instruments as appearing from the form thereof, the question is before us as to whether in fact and in law the transaction was such as is claimed by plaintiffs, or such as is claimed by defendants. A deed absolute on its face may be declared to be a mortgage, when given as security for a loan. *Mintz* v. *Soule,* 182 Mich. 564 (L. R. A. 1916B, 15). In determining whether an instrument is a deed or a mortgage the issue is solely one of fact and the controlling criterion is

the intention of the parties. *Jankowski* v. *Szpieg,* 282 Mich. 397. Hence the facts appearing from this record must be carefully scrutinized for the purpose of ascertaining the true character of the transactions here involved and the intent of the parties incident thereto.

Plaintiffs claim they obtained fee title and subsequently sold on land contract to defendant Evelyn Bement; that for the following reasons the transaction was not in legal effect a mortgage loan: 1. The defendants' right to redeem from the Collateral Liquidation company's foreclosure expired January 1, 1941; and therefore they had no interest in the property on January 2, 1941, and it would follow they could not give a mortgage on the property. 2. That the parties did not at the time intend this to be a mortgage loan. 3. That the burden of proof that the transaction in legal effect was the consummation of a mortgage loan is upon the defendants. 4. That a supplemental consent decree entered in the Collateral Liquidation company's foreclosure proceedings on January 10, 1941, resulted in an adjudication that defendants in the present suit surrendered possession of the premises to plaintiffs herein and further adjudged plaintiffs to be holders of the title to the premises. 5. That while plaintiffs came into the transaction on January 2, 1941, at which time in order to obtain a quitclaim deed from Collateral Liquidation, Inc., they paid to it $16,613.86, defendants herein did not assume any obligation to plaintiffs until January 11, 1941. 6. And since on January 11, 1941, all parties to this suit stipulated that plaintiffs' title was absolute and that defendant Evelyn Bement's interest was solely that of a contract vendee at a price of $22,665, the court cannot adjudicate otherwise.

But on the other hand, defendants assert that the transactions between the parties in fact and in law

resulted in the consummation of a mortgage loan for the following reasons:. 1. That it was never the intention of Collateral Liquidation, Inc., to convey as grantee the fee title to plaintiffs herein, but rather to accept from plaintiffs payment in redemption of the company's mortgage. 2. That defendants gave a quitclaim deed wherein plaintiffs appear to be grantees because Collateral Liquidation, Inc., made the execution and delivery of such a deed a condition precedent to plaintiffs' right to a quitclaim deed from Collateral Liquidation, Inc. 3. The defendants authorized delivery of the quitclaim deed after plaintiffs agreed to loan defendants sufficient funds to redeem, for which loan defendants agreed to pay plaintiffs a bonus of $6,000.

The facts in this case show Bement had sought to redeem his property. Neither he nor his agent Yates succeeded in securing sufficient funds to redeem. On January 1, 1941, the six-months' period to redeem expired as a matter of law, foreclosure sale having occurred July 1, 1940. However, an officer of Collateral Liquidation, Inc., testified that his company was willing to let Bement redeem on January 2, 1941, the day plaintiffs made their payment to the company, because the agent of this mortgagee thought the period of redemption was extended on account of the fact that the last day of redemption fell on a holiday, that is, January 1, 1941. This officer testified:

"It was a redemption in our opinion on January 2d or we would not have accepted $16,613 for that property."

It is a fair inference from the record that on January 2, 1941, both Attorney Beckenstein and Mr. Yates understood that the period of redemption had expired, except for the additional redemption period decreed to the Federal government in conse-

quence of its income tax lien; but that Collateral Liquidation, Inc., "did not seem to be wise." Beckenstein and Yates then went to Collateral Liquidation, Inc., where plaintiffs paid the amount necessary for redemption under the foreclosure sale, but only after Yates showed to the Collateral Liquidation company's representative a quitclaim deed from defendants herein to plaintiffs. Plaintiffs thereupon received a quitclaim deed from Collateral Liquidation, Inc.

Previous to this, but on the same day, the parties had agreed upon a plan whereby plaintiffs did advance the money, $16,613.86, for 18 months for a bonus of $6,000. Out of the $6,000, $1,000 was to go to Yates and Beckenstein for services rendered. Beckenstein had called an attorney at Pontiac, near where the property was located, to ascertain who had the title to the property and its value. He learned that a real estate man there estimated the property to be worth $25,000 and also that a local bank would not loan more than $12,000 on the property. Collateral Liquidation company had an appraisal that was several years old of the property at a figure of $36,000. It may also be noted that Austin Bement's former wife was decreed a lien on this property to secure payment to her of moneys awarded to her in the divorce suit. Seemingly this lien of the former wife was subordinate to the mortgage lien of Collateral Liquidation, Inc. On January 11, 1941, the next day after the entry of the above-noted consent decree, the alleged contract of sale and purchase was entered into between plaintiffs and Bement's present wife, Evelyn Bement. As additional security for the performance of the contract, defendants gave plaintiffs a chattel mortgage on the furniture located in the mortgaged premises. This, to say the least, was unusual if the transaction was in fact an ordinary sale of the property

on land contract. And it is interesting to note that though the land contract was executed as of January 11, 1941, the interest began to run from January 2, 1941.

It would be of no service to recite in detail other facts and circumstances appearing in the record. After careful consideration of all the evidence, we are satisfied that the transactions involved in this suit were consummated to effect in fact a loan by means of which all parties to this suit contemplated redemption from the Collateral Liquidation company's foreclosure by Mr. Bement, and payment of money advanced by plaintiffs was secured by vesting record title of the mortgaged property in them with a land contract back to Mrs. Bement. We are unable to find that plaintiffs in this case ever contemplated in a *bona fide* sense that they should become the owners in fee of this property. Instead all phases of the transaction taken as a whole, which to say the least is rather ingeniously camouflaged, lead to the plain disclosure that plaintiffs were motivated by a desire to make an usurious loan to Bement by means of which he sought to save himself from loss of his property in consequence of the foreclosure by Collateral Liquidation, Inc.

A circumstance which obviously is not controlling may be noted in connection with the government's income tax lien to which reference has been made. In consequence of this lien, as well as the provisions in the foreclosure decree, the Federal government had the right to redeem from the mortgage foreclosure, and this right continued for six months after plaintiffs claim to have secured title to the mortgaged property. Notwithstanding plaintiffs' claimed title was subject to termination in the event of redemption by the Federal government, it is their

claim they entered into a *bona fide* contract for the sale of the premises to Mrs. Bement. In their contract with Mrs. Bement plaintiffs attempted to meet this situation by providing in effect that if there was redemption by the Federal government both the vendors and the vendee should be released from any further obligation under the contract; except in such event, in addition to plaintiffs' right to retain as rentals all payments made by the vendee, plaintiffs should "be entitled to the payment of the further sum of $6,000, with interest thereon," such payment to be secured by the chattel mortgage given by defendants to plaintiffs. It is also somewhat significant that in March, 1941, Austin F. Bement secured a release of the Federal government's lien in the amount of approximately $6,400 by the payment of substantially $800, notwithstanding Mr. Bement then had no interest of record in the real estate. And as late as April 4, 1941, plaintiffs' attorney in a letter addressed to Mr. Bement referred to the transactions hereinbefore noted as a sale of the property to *Mr.* Bement. This, as well as other circumstances disclosed by the record, indicates that the dealings between these parties were merely a method of saving or redeeming for Mr. Bement his mortgaged property.

We are mindful appellants stress the contention that the supplemental decree entered in the foreclosure proceedings on January 10, 1941, was *res judicata* of plaintiffs' claim that they then were the possessors of absolute title to the mortgaged premises. This contention is not tenable as against the rights of Mrs. Evelyn Bement, the vendee in the land contract. She married Mr. Bement after the foreclosure suit was started. It is sufficient to note that she was not a party to the foreclosure suit in which the supplemental decree was entered, nor did

she consent to such decree. It was not *res judicata* as to Mrs. Evelyn Bement.

There is no merit to appellants' contention that instead of dismissing plaintiffs' bill of complaint, the trial court should have proceeded to a foreclosure of the land contract. This could not have been done because the proper and necessary parties were not before the court. After plaintiffs secured apparent record title to the property, they negotiated a mortgage loan in the amount of $12,000 with the Community National Bank of Pontiac. In equity, as well as by the express terms of the land contract, this mortgage loan should be given priority over plaintiff vendors' rights; but the mortgagee was not made a party to this suit. It is obvious a foreclosure of the land contract and complete determination of rights between these parties could not be adjudicated except the holder of such prior mortgage lien was a party to the proceedings and the amount of the mortgage lien definitely adjudicated.

The decree in the circuit court dismissing plaintiffs' bill of complaint wherein they sought foreclosure of both the land contract and the chattel mortgage is affirmed, but without prejudice to further proceedings incident to foreclosure of the land contract or chattel mortgage mentioned herein. Costs to appellees.

CHANDLER, C. J., and BOYLES, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.