# OCTOBER TERM, 1915.*

## PRENTIS v. PRENTIS.

1. QUIETING TITLE—PAROL AGREEMENTS—EQUITY—TRUSTS.

Where complainants brought a suit to quiet title to store property in Detroit that defendants averred and gave testimony to show had been conveyed in trust to complainant charged with the obligation to pay over to his two brothers such sums of money as they might need, and where the claimed trust had been recognized by complainant who had paid considerable sums to the brothers from time to time, and who later voluntarily executed a quitclaim deed to one of the sisters-in-law, the conveyance being intended for the purpose of enabling her husband to borrow money and with the oral arrangement that it should be reconveyed to the grantor (afterwards carried out), and, where it further appeared that the grantee quitclaimed said premises to a son, who also found a blank deed from the first grantor, and filling up the spaces, recorded it so as to clear up title in his mother, the trial court properly treated the deeds from the sister-in-law to her son as void, and rightly found defendant to be the owner in fee, the complainants failing to produce evidence that would preponderate in their favor, and hence not sustaining the burden of proof resting upon them.

2. SAME—STATUTE OF FRAUDS.

Under section 9509, 3 Comp. Laws, performance of the alleged oral agreement sufficiently met any objection as to the invalidity of the trust because it was not in writing; if the executory arrangement was fully carried out by the parties, no sufficient reason existed to invalidate their acts by reason of the statute of frauds aforesaid.

3. SAME—EVIDENCE.

*Held*, further, that the grant of title by the wife of one of

*Continued from Vol. 188.

the brothers to her husband was understandingly executed
and that she knew the purpose was to permit him to
mortgage the property.

4. SAME.

And the evidence failed to meet the burden of proof upon
the contention that equitable title rested in the three
brothers, two of whom. received unequal shares of the
rent, and paid taxes jointly; having but a tendency to
show a beneficial use, not an equitable right in the real
estate.

Appeal from Wayne; Van Zile, J. Submitted June
10, 1915. (Docket No. 39.) Decided December 21,
1915.

Bill by John H. Prentis and another against George
H. Prentis and others to quiet title to certain real
property. From a decree for defendants, complainants
appeal. Affirmed.

*Henry B. Graves* and *Arthur E. Fixel,* for complain-
ants.

*George H. Prentis,* in *pro. per.*

*George G. Prentis* and *Benjamin F. Mulford (James
O. Murfin,* of counsel), for defendant John F. Prentis.

KUHN, J. The bill of complaint in this case was
filed to quiet the complainants' alleged title to certain
real estate in Detroit, which was formerly the home-
stead of Eben Prentis, and is now occupied by Himel-
hoch Bros. & Co.'s store on Woodward avenue, in the
heart of the business section of Detroit.

Eben Prentis died in October, 1868, leaving three
sons, John F., George H., and Browse T. The first two
named sons are the principal defendants in this suit,
and the widow of Browse, Mary, and their son John H.
(called Jack) are the complainants. The defendants
Wayne County & Home Savings Bank and the Mutual

Benefit Life Insurance Company hold mortgages on the property, and Himelhoch Bros. & Co. hold a lease; but their interests are not adversely affected in this litigation, and they are therefore merely nominal parties.

On July 15, 1862, Eben Prentis conveyed the property to his son John F. by warranty deed. The defendants contend, and presented testimony in support of their claim, that at the time this conveyance was made it was understood between Eben and John F., who had no business of his own, that he was to give to his brothers money whenever they wanted it. It is the contention of complainants that this deed was given in trust for all three sons. On June 21, 1889, John F. gave to Mary, the wife of Browse, a quitclaim deed of the property—defendants say at the solicitation of Browse, who wished to borrow money on it, and assured John F. that he should have the property back. Complainants say that this deed was given to Mary in trust for the three brothers, because foreclosure proceedings were pending against other property of John F. On April 9, 1891, Mary conveyed the property to Browse by warranty deed, which was recorded June 17, 1907, and on June 15, 1907, Browse conveyed the property to John F. by warranty deed, and on January 12, 1912, Mary quitclaimed to John F. The defendants say that this latter deed was in fulfillment of the plan by which the title originally vested in Mary. Complainants say it was procured by representations that it was needed to complete arrangements for a new building, for which Himelhoch Bros. & Co. were to make advances of rent, and John F. and George H. borrowed $35,000 on a mortgage given to the Wayne County & Home Savings Bank.

On July 25, 1904, Jack Prentis received from his mother a warranty deed of the premises. Browse T. Prentis died May 4, 1912, devising all his property to his wife first, and to his son Jack if his wife should

predecease him. After his father's death, Jack found among his papers a blank deed signed by John F. Prentis and acknowledged in blank before a notary public whose commission had expired in 1911. He filled up the blanks in the deed by inserting a description of the property here in suit, the date January 15, 1912, and the name of Mary Prentis as grantee, leaving the acknowledgment in blank. The witnesses were Jack Prentis and the notary. The real date of the deed is in dispute, as well as the purpose of it. It is the contention of the complainants that it was left with Browse shortly after the recording of the deed of Mary to Browse and Browse to John F., "for the purpose of protecting his branch of the family in their interests in the property." It is the contention of the defendants—and they presented the testimony of the notary and John F. to prove it—that it was given to enable Browse to sell some property on Crane avenue, owned by John F. and Browse, while John F. was in Florida for the winter. After the discovery of this blank deed, and before filling in all the blanks, Jack consulted his attorney, Mr. Fixel, upon whose advice he secured another warranty deed from his mother on October 28, 1913, and recorded it at once to protect his claimed rights. The deed of July 25, 1904, from Mary to Jack Prentis had not been recorded, for the reason, as given by Jack, that he did not wish to have his father know of its existence. Complainants in this suit, however, rest no claim of title on this blank deed, and say that it was only used "to bring George H. Prentis into the light," whom the complainants charged with machinations to get control of the property. Jack Prentis and Mr. Fixel interviewed the notary about the blank deed, and on the next day, when the notary told George H. about the interview, George H. placed on record a warranty deed from John F. to himself, dated December 18, 1913.

Mortgages were issued on the property from time to time by John F. prior to April 9, 1891, the date of the deed to Mary, and by Mary and Browse T. after that date; and the proceeds were shared by the brothers, principally by George H. and Browse T. Leases which had been negotiated by Browse, between 1891 and 1907, were made in the name of John F. Prentis, and one was signed in 1895, "John F. Prentis, by Browse T. Prentis, his attorney." Rents were collected at times by Browse, and after his death by Jack, and receipts given, in the name of John F., and John F. made a division of the rents with his brothers. During all this time John F. usually collected the rents in person.

The bill prays that the deeds of Mary to Browse (April 9, 1891), Browse to John F. (June 15, 1907), and John F. to George H. (December 18, 1913), be set aside as clouds upon the title of Jack Prentis, and that John F. give a quitclaim deed to discharge any right, title, and interest appearing of record to have been conveyed to him by the quitclaim deed of Mary Prentis of January 12, 1912.

The trial judge found for the defendants, dismissing the bill of complaint and granting the relief prayed for by George H. Prentis in his cross-bill by declaring the two deeds by Mary to Jack Prentis void and adjudging George H. Prentis to be the owner in fee simple of the premises.

It is impossible, in a reveiw of this case, to attempt to set forth in an opinion the many incidents found in the record which show the unusual business relations which existed during many years between the parties to this litigation. But after a careful study of this record we are firmly of the opinion that there are at least as many things consistent with the theory of legal title in the defendant George H. Prentis as in the complainants. Complainants' case must therefore fail, as

they have not met the burden which rests upon them to prove their case.

In our opinion, the theory of the defendants with reference to the deed of John F. to his sister-in-law Mary, given in 1889, is the only reasonable explanation which can be given for this transfer. It seems to carry out the theory of the original understanding between John F. and his father, and that its purpose was to permit Browse to raise money on it is clearly evidenced by the fact that he did thereafter secure funds by giving a mortgage.

It is contended that no evidence of a parol trust or parol condition is competent under the statute of frauds (section 9509, 3 Comp. Laws). But while there can be no question that a title cannot be established by parol evidence, we think that this testimony was proper to explain the voluntary conveyance had with reference to this property, and to show why Mary Prentis received her deed, and why she conveyed it to Browse, and in 1912 quitclaimed to John F. If she had not reconveyed, it is clear that the testimony would not have established a trust in favor of the defendants; but here the transaction was completed and the parol agreement fully executed, and therefore the statute of frauds has no application, under the authority of *Lasley* v. *Delano,* 139 Mich. 602 (102 N. W. 1063), where this court said:

"Neither the statute of frauds, nor that of uses and trusts, applies to this case. The parol contract between complainant and Mr. Delano has been performed, and the parol trust imposed upon him fully executed. No contract for the sale of lands is involved. * * * If, however, the trust rested in parol, and while so resting could not be enforced as an executory contract, yet, when the parol agreement has been executed, neither party can invoke the statute. The courts have repeatedly held that a party may perform a promise which he could not legally be compelled to

perform, and that, when so performed, it is binding upon him and the other party to it."

It was so considered, we think, by counsel, and we are also of the opinion that the most important question in controversy in the case is the validity of the deed of April 9, 1891, given by Mary Prentis to Browse T. Prentis. With reference to this deed the learned circuit judge made the following finding, with which conclusion, after a careful examination of her testimony, we concur:

"Now the court finds as a matter of fact that there was no fraud inducing the execution of this deed from Mary Prentis to her husband, Browse T. Prentis, and that she understood fully the purpose of that deed; that she understood it not only by reason of the understanding that had been had, of which she was fully conversant, but had seen that deed; it was written in her own handwriting, and executed; and the proofs show and warrant the statement that this title was simply handed to Mary Prentis to be used as directed by Browse Prentis, for his benefit, in raising some money, and for the making of this mortgage and some other mortgages; and that it was understood that it was to be returned to John F. Prentis. Browse T. Prentis did, after having received this deed from Mary Prentis, keep it off the record a short time to be sure, but Browse T. Prentis, on the 15th of June, 1907, to comply with this promise he had made to his brother, deeded the property back to John F. Prentis, and later, by way of confirming the title of January 12, 1912, Mary Prentis quitclaimed to John F."

With reference to the contentions of the complainants that the property was beneficially owned by the three brothers, each having an equitable interest, and that the interest of Browse T. Prentis passed by the will to the complainants, it must be said that the evidence in support thereof is very meager, if not negligible. There is no dispute about the validity of the deed of Eben Prentis to John F., which vested the title ex-

clusively in John F. The only competent evidence in support of the theory that there was an equitable title in all the brothers was the fact that they all shared in the proceeds of the rent and mortgages, and divided the taxes between them. But it can be said, with force we believe, that this fact was entirely in accord with the defendants' contention as to the understanding which accompanied the giving of the deed, and is proof of John F.'s faithful performance of his father's request. The very irregular division of the proceeds and the taxes tends to substantiate the evidence of the understanding that John F. was to give his brothers money when they needed it, as was also the fact that the arrangement did not seem to become very definite until 1902 or 1903. As the years went by the brothers seemed to share the property and its proceeds on a more and more definite basis, and they apparently had an understanding that each was to have a part of the proceeds and therefore each should help pay the obligations. But if the property were beneficially *owned* by all three, not beneficially *used*, it is inconceivable that there would have been such an indefinite, haphazard, uneven division of the profits.

Complainants having failed in their case, we conclude that the decision of the court below should be affirmed, and that a decree should be entered as prayed by the defendants in the cross-bill, with costs to the defendants.

BROOKE, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.