**Barbara Ann LAVEAN, Plaintiff,**

v.

**Paul E. COWELS, Defendant.**

**No. 5:92cv 109.**

United States District Court,
W.D. Michigan, S.D.

Oct. 28, 1993.

Steven A. Ramey, for plaintiff.

Steven C. Watt, for defendant.

## OPINION

SCOVILLE, United States Magistrate Judge.

This civil action has been tried to the court without a jury. The parties consented in writing to trial and disposition of the matter by a magistrate judge, with appeal to the Court of Appeals (Consent, docket #12). The following opinion represents my findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).

### Parties, Jurisdiction, And Claims

This action began with the filing of a one-count complaint to quiet title to a 105–acre farm located in Ionia County, Michigan. Plaintiff, Barbara Ann LaVean, is a citizen of the State of Virginia. Defendant, Paul E. Cowels, is a citizen of the State of Florida. The amount in controversy in the original complaint—the value of the 105–acre farm—exceeds $50,000, exclusive of interest and

costs. This court therefore has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Venue over the original complaint was proper under 28 U.S.C. § 1391(a)(2), in that the real property that is the subject of the action is situated in this judicial district.

Plaintiff and defendant are brother and sister. They each claim title to the 105–acre farm as a result of deeds from their mother, Lila B. Cowels, now deceased. Defendant claims under a quitclaim deed dated September 10, 1987. Plaintiff's complaint contends that this deed is a forgery (Complaint, ¶ 13) and, even if valid, did not convey fee simple title to defendant (Complaint, ¶ 17). Plaintiff claims title under a quitclaim deed from her mother dated April 18, 1992. By her original complaint, plaintiff seeks to declare the September 10, 1987 deed to her brother void and to quiet title in herself.

On March 10, 1993, plaintiff was granted leave to file an amended complaint (docket # 28). The amended complaint adds a second and unrelated claim, contained in paragraphs 20–23 of the amended complaint. This claim was asserted after the death of Lila Cowels and is brought by plaintiff as the personal representative of her mother's estate. The added claim seeks an accounting from defendant and recovery of certain funds allegedly owed by defendant to his mother before her death. Although the amended complaint does not contain separate counts, for purposes of clarity this opinion will refer to the quiet title claim as "count 1" and the added claim brought by plaintiff as personal representative as "count 2."

As set forth in the amended complaint, the only clearly pleaded legal theory supporting count 1 is that the 1987 deed from Lila Cowels to her son Paul contained a forged signature of Lila Cowels and was therefore fraudulent (Amended Complaint, ¶¶ 13, 14). As the case progressed, however, plaintiff asserted other, unpleaded theories in support of her claim to the 105–acre farm. Count 2, as pleaded, sought to recover a loan in the amount of $45,000 allegedly made by Lila Cowels to defendant (Amended Complaint, ¶¶ 20, 22) and share-cropping payments in the approximate amount of $3,000 collected

by defendant from a tenant on the 105–acre farm (Amended Complaint, ¶ 25).

All claims were tried to the court sitting without a jury on August 12, 1993. Both parties presented witnesses and exhibits. In addition, the deposition of Bruce A. Lincoln, the attorney who drafted two of the deeds in question, was received into evidence pursuant to Fed.R.Civ.P. 32(a)(3), upon a finding that Mr. Lincoln was more than 100 miles from the courthouse at the time of trial and that his unavailability had not been procured by any party. On the basis of the evidence adduced at trial, I make the following findings of fact and conclusions of law.

### Findings of Fact

#### A. Count 1—Quiet Title Action

1. The real estate that is the subject of count 1 of plaintiff's amended complaint (¶¶ 1–19) is a 105–acre farm situated in Berline and Odessa Townships, Ionia County, Michigan.

2. Before November of 1984, title to the farm was in Lila B. Cowels and George E. Cowels, her husband. On November 28, 1984, Lila and George Cowels executed a quitclaim deed conveying the property to plaintiff and defendant as "joint tenants with full right of survivorship and not as tenants in common." (Pl.Ex. C). The quitclaim deed reserved to Lila and George Cowels a life estate in the farm. Both parties testified at trial that the motive behind this transfer was to put Mrs. Cowels' financial affairs in order, because she was suffering from poor health and George E. Cowels was in a nursing home. Supposedly, the purpose for the transfer was to give plaintiff and defendant easy access to the farm as an asset, so that the farm could be liquidated to pay for George and Lila Cowels' upkeep in case they both became incapacitated. It is unclear to me how the deed would have had this effect, as the parents retained a life estate, which would have prevented liquidation of the property during their lifetime without their signatures. It is more likely that the transfer was made in order to shield the farm from claims by the government, which was apparently paying for George Cowels' nursing home expenses under the Medicaid program. It is not necessary, however, to resolve this issue for purposes of the present case, as the motivation of George and Lila Cowels for the transfer to their children is immaterial. The important, and undisputed, fact is that the transfer was made as an accommodation, without consideration, and that plaintiff and defendant were obliged to reconvey the farm to their parents upon request.

3. George Cowels died in December of 1985. By operation of law, the joint life estate created by the November 28, 1984 deed became vested solely in Lila B. Cowels upon George's death.

4. On September 10, 1987, Paul Cowels and his mother Lila B. Cowels went to the office of Bruce A. Lincoln, an attorney in Lake Odessa, Michigan. Mr. Lincoln had been acquainted with Lila Cowels since 1982. Mr. Lincoln had also done some minor real estate work for Paul Cowels before September of 1987. Paul Cowels made the September 10, 1987 appointment with Mr. Lincoln.

5. On September 10, 1987, Lila Cowels told Attorney Lincoln that she wished to convey the farm to her son Paul, the defendant herein. Upon reviewing the state of the title, Mr. Lincoln advised Mrs. Cowels that she did not have complete title to the property, because of the 1984 deed, and would need to receive a quitclaim deed from plaintiff and defendant before delivering a deed to Paul. Lila Cowels told Mr. Lincoln that she wanted to give the farm to Paul because he understood farms and would be able to manage it, whereas her daughter, plaintiff Barbara LaVean, could not manage the farm. Mrs. Cowels said that she had given or would give Barbara other property. These statements were made to Mr. Lincoln in a private meeting between him and Lila Cowels, as Paul Cowels had purposely removed himself from the room so that his mother could confer with the attorney in private.

6. To effect the stated wishes of Lila Cowels, attorney Lincoln prepared two deeds on September 10, 1987. The first deed (hereafter referred to as the "Barbara and Paul/Lila deed") was a joint quitclaim deed transferring the interests of plaintiff and defendant in the farm back to their mother

(Pl.Ex. A). This deed was prepared by Mr. Lincoln and his secretary on September 10, 1987, and was signed by Paul Cowels on that day. A counterpart deed for Barbara LaVean's signature was also prepared by Mr. Lincoln and mailed to her. Plaintiff Barbara LaVean was not expecting to receive a deed. She refused to sign it until she received an explanation. Plaintiff spoke to Mr. Lincoln on the phone and he assured her that the deed represented her mother's wishes. Plaintiff persisted in her refusal, until she knew that her brother Paul had signed the deed first. Consequently, Mr. Lincoln sent plaintiff the deed that Paul had previously signed. Plaintiff affixed her signature to the deed on September 22, 1987, and mailed it to Mr. Lincoln.

7. Both plaintiff and defendant executed and delivered the Barbara and Paul/Lila deed because they were bound to do so pursuant to their original understanding with their parents at the time of the 1984 conveyance to them. Plaintiff and defendant had been holding title only as an accommodation to their mother and were bound to reconvey it to her upon her request. Delivery of the Barbara and Paul/Lila deed was complete upon receipt of the deed by Mr. Lincoln, who was acting as attorney for Lila Cowels, in late September, 1987. When Mr. Lincoln received the deed from plaintiff, it had been signed by both plaintiff and defendant. The Barbara and Paul/Lila deed was recorded on October 5, 1987 (Pl.Ex. A).

8. The second deed prepared by Mr. Lincoln on September 10, 1987, was a quitclaim deed from Lila B. Cowels to defendant Paul Cowels (hereafter the "Lila/Paul deed"). This deed (Def.Ex. 1) is the deed by which defendant claims title to the 105–acre farm and is the subject of plaintiff's attack in this quiet title action. The only clearly pleaded theory in plaintiff's amended complaint is that the signature of Lila B. Cowels on the Lila/Paul deed is a forgery. Plaintiff has completely failed to support this allegation with proof. Plaintiff's expert witness, Leonard Speckin, is a document examiner of impressive credentials, whose testimony I credit. Mr. Speckin testified without equivocation that the signature appearing on the Lila/Paul deed is in fact the "true signature" of Lila B. Cowels. The testimony of attorney Lincoln and his secretary Karen Brodbeck, both of whom witnessed the signature, also supports this conclusion. I therefore find as a fact that the signature of Lila B. Cowels on the Lila/Paul deed is true and is not a forgery.

9. Mr. Speckin further testified that he subjected the Lila/Paul deed to examination under an electrostatic detection apparatus (ESDA) which disclosed so-called "impressed writings" on the document. The impressed writing was not in ink on the surface of the document, but was only impressed into the paper. Mr. Speckin located two impressed signatures on the Lila/Paul deed, one of Karen Brodbeck and the other of Bruce Lincoln. On this basis, plaintiff argues that there was an unspecified "third deed" signed by Lila B. Cowels as part of a fraud upon her perpetrated in Mr. Lincoln's office on September 10, 1987. The evidence does not support plaintiff's contention. Mr. Speckin testified only that both Mr. Lincoln and Ms. Brodbeck signed another document that was on top of the Lila/Paul deed at the time the other document was signed and that the document (judging by the position of the signatures) was probably another quitclaim deed. Although I credit Mr. Speckin's testimony, it does not support the inferences suggested by plaintiff. As Mr. Speckin conceded, the impressed signatures could have been made before or after the Lila/Paul deed was signed. There is no proof that a third quitclaim deed had anything to do with these parties or with the deeds signed on September 10, 1987. Mr. Speckin's testimony establishes only that at some undetermined time Mr. Lincoln and Ms. Brodbeck signed another deed that happened to be on top of the paper that eventually became the Lila/Paul deed. Neither his testimony nor any other evidence establishes that the Lila/Paul deed was fraudulent or that Lila Cowels signed an unspecified "third deed" as part of a fraud upon her.

10. Lila Cowels did not deliver the Lila/Paul deed to defendant until after the Barbara and Paul/Lila deed had been delivered to her. At the time of her delivery of the

Lila/Paul deed to defendant, Lila Cowels had complete title to the 105–acre farm. Delivery of the Lila/Paul deed to defendant occurred in late November, 1987, by Lila's handing of the executed deed to defendant. Defendant accepted the Lila/Paul deed. He recorded it on December 21, 1987 (Def.Ex. 1).

11. There is evidence that Lila Cowels continued to pay tax and insurance bills on the 105–acre farm for a time after she conveyed the farm to defendant (Pl.Exs. J–W). This was done pursuant to an agreement between Lila and defendant that allowed her to continue collecting the rent, and paying the expenses, of the farm until defendant's 62nd birthday. Consequently, Lila's continued payment of taxes and insurance is not inconsistent with her intent to deed the farm to defendant in the fall of 1987.

12. There is no reason to doubt the veracity of Bruce Lincoln or Karen Brodbeck. The testimony of Mr. Lincoln concerning Lila Cowels' intent on September 10, 1987, his advice to her concerning the best way to effectuate her intent, and the circumstances surrounding the execution and delivery of the deeds in question is fatal to plaintiff's claims. In order to accept plaintiff's claims, this court would be required to conclude that Mr. Lincoln was involved in a criminal scheme to defraud an elderly widow. In light of plaintiff's total lack of any proof in this regard, plaintiff's allegations are reckless. Mr. Lincoln considered himself as acting on behalf of Mrs. Cowels, who paid his bill. He was acquainted with both Lila and Paul Cowels, and had no motive to act in a dishonest manner. In fact, Lila Cowels used Mr. Lincoln's services in 1988, after the transaction in question here. The fact that Mr. Lincoln entered an appearance for defendant in the present case for a short period of time does not alter my conclusions about his credibility. Mr. Lincoln testified that he knew that he was disqualified from representing defendant because of his previous representation of Lila Cowels, but he nevertheless filed an answer to prevent default against defendant. Mr. Lincoln's brief appearance for defendant, in these circumstances, is insufficient to persuade me that Mr. Lincoln is aligned with defendant, is perjuring himself, or has participated in a fraud upon Mrs. Cowels.

13. In 1989, Lila Cowels began to insist that she had not transferred the 105–acre farm to defendant. On October 18, 1990, an attorney for Mrs. Cowels contacted defendant (Letter, Pl.Ex. 28), reporting that Mrs. Cowels "never intended to grant you title to this property" and stating that Mrs. Cowels had no recollection of signing the Lila/Paul deed and was uncertain that the signature was hers. In response to the letter, Mr. Lincoln contacted the attorney by telephone and explained his recollection of the events surrounding execution of the deed. Lila Cowels never took legal action concerning the deed. Her conduct in 1989 and after, although relevant, does not persuade me that she lacked the intent in the fall of 1987 to transfer title to defendant by means of the Lila/Paul deed.

14. On April 18, 1992, Lila Cowels executed a quitclaim deed to Barbara LaVean, quitclaiming to her daughter all of her interest in the 105–acre farm (Pl.Ex. B). Plaintiff claims title as a result of this deed. This deed was recorded with the Ionia County Register of Deeds on April 24, 1992.

## B. Count 2—Recovery of Debts Allegedly Owed To Lila B. Cowels

15. Lila B. Cowels died January 14, 1993. She purportedly left a will, naming plaintiff as her personal representative. At the time of trial, however, the will had not been admitted to probate nor had the appropriate probate court issued letters of authority to plaintiff. Letters of authority were issued on August 17, 1993, five days after the trial. Plaintiff has filed a certified copy of her letters of authority with the Clerk (docket # 38).

16. In paragraph 23 of the amended complaint, plaintiff, as personal representative of Lila Cowels, alleges that defendant accepted and retained approximately $3,000 of sharecrop proceeds from Larry Curtis, allegedly belonging to Lila Cowels. Plaintiff produced no evidence at trial in support of this allegation. I therefore find against plaintiff on this claim, for want of proof.

17. In paragraphs 20–22 of the amended complaint, plaintiff alleges that defendant owed Lila Cowels an amount between $8,000 and $45,000, arising from a loan. By the time of trial, this claim had metamorphosized. At trial, plaintiff introduced a torn-up deed (Pl.Ex. D) purporting to quitclaim Paul Cowels' interest in a separate piece of real property at 918 Lakeview Ave., Lake Odessa, Michigan, to Lila Cowels. This deed is dated March 26, 1985. It was never recorded. Paul Cowels sold this property on June 19, 1990, to a third party for $55,000. At the time of trial, plaintiff, as personal representative of Lila Cowels, asserted entitlement to the proceeds of this sale, contending that the 918 Lakeview property belonged to Lila Cowels as a result of the deed (Pl.Ex. D). Plaintiff presented the testimony of Wilma J. Smiley, which established the authenticity of plaintiff's exhibit D, but plaintiff did not present any proofs concerning the purpose for the unrecorded deed, the consideration given for it, or the circumstances surrounding its execution.

18. On the basis of defendant's testimony and the documentary evidence that he presented at trial, I find that plaintiff's exhibit D was not intended to transfer title to Lila Cowels but was a security device in the nature of a mortgage. Paul Cowels acquired title to the 918 Lakeview property by paying off the mortgage, in the amount of $23,500. He received title to the property by warranty deed dated October 19, 1984 (Pl.Ex. 22). In connection with this purchase, defendant borrowed from Lila B. Cowels the sum of $35,-000, $23,500 of which was used to acquire the property and the rest of which was used to fund improvements. He repaid Lila in periodic installments, with interest at the rates of eight to nine percent. Defendant and Lila Cowels had a similar arrangement with regard to real property located at 1003 First Avenue, Lake Odessa, Michigan. With regard to both real estate purchases, defendant borrowed money from his mother and repaid her in installments, with interest. (See Def. Ex. 27, Schedule of Repayments for 1003 First Street).

19. With regard to the 918 Lakeview property, Lila Cowels both received periodic payments from defendant and paid him rent for a time, as she was living in the property. She eventually moved and stopped paying rent.

20. Defendant sold the 918 Lakeview property for $55,000, conveying it to a third party by warranty deed dated June 19, 1990 (Pl.Ex. Z–3). He paid Lila Cowels the outstanding balance on the loan by checks in the amount of $15,706 (Def.Ex. 9) and $15,000 (Def.Ex. 10). On the basis of these exhibits, defendant's accounting records, receipts signed by Lila Cowels (Def.Exs. 3, 4, 5, 6) and defendant's testimony (which is completely supported by the documentary evidence), I find that by July 12, 1990, defendant paid Lila B. Cowels in full for the loan she had previously made to him in connection with the 918 Lakeview property.

21. In light of the foregoing facts, I find that plaintiff's exhibit D, the apparent deed given by defendant to Lila Cowels, was not intended to transfer title but was only intended as a security device to secure her purchase money loan to defendant made in connection with his acquisition and improvement of the 918 Lakeview property. This conclusion is further bolstered by the fact that the deed was not notarized, was not in recordable form, was never recorded, and was found in a torn-up condition after her death.

22. On the basis of the foregoing, I find that no money was owing on the 918 Lakeview transaction from defendant to Lila B. Cowels at the time of her death, either as the result of an unpaid loan or from the proceeds of the sale of the 918 Lakeview property.

### *Discussion and Conclusions of Law*
#### I. Conforming The Pleadings To The Proofs

The pleadings in this case are not a model of clarity or consistency. Plaintiff would be especially prejudiced by a strict adherence to the claims as pleaded. Defendant was also not careful about the pleadings, although to a lesser extent.

The only basis clearly pleaded in the original or amended complaint in support of count 1 (quiet title action) was that the signature of

382

Lila B. Cowels on the Lila/Paul deed was a forgery. This theory was destroyed by plaintiff's own expert, who testified that the signature was genuine. A strict adherence to the pleadings would have required dismissal of count 1 of plaintiff's amended complaint at that point. Nevertheless, from the time of the filing of plaintiff's summary judgment motion on February 1, 1993 (docket # 15), defendant was on notice that plaintiff was asserting an alternative claim, based upon the sequence of delivery of the deeds drafted by Mr. Lincoln on September 10, 1987. Defendant never objected to the assertion of this alternative, but unpleaded theory. By the time of trial, plaintiff was asserting yet a third theory in support of count 1—that the signature of Lila Cowels, although genuine, was procured by defendant's fraud. This theory depended upon the existence of a "third deed" allegedly prepared by Mr. Lincoln and signed by Mrs. Cowels. Again, defendant did not object to the assertion of this theory. Likewise, when plaintiff amended count 2, she never alleged her status as personal representative of the estate of Lila B. Cowels. Plaintiff merely amended the caption to indicate that she was personal representative, but never amended the substantive allegations of the complaint in this regard. In fact, the amended complaint even failed to allege that Lila Cowels had died. Defendant did not object to this obvious pleading deficiency until the close of proofs.

Defendant was likewise careless. In his answer to the amended complaint (docket # 24), defendant alleges affirmatively that Lila Cowels "transferred her interest in the farm on September 10, 1987" (¶ 18), referring to the Lila/Paul deed. Similar statements were made in defendant's brief in opposition to plaintiff's summary judgment motion (docket # 19). Although the deed was dated September 10, 1987, the question of the date of its delivery was hotly contested at trial. By these ambiguous allegations referring to a "transfer" on September 10, 1987, defendant could be deemed to have admitted, in an indirect way, that the deed was delivered on September 10, although the amended complaint, in its own ambiguous way, never directly alleged the date of delivery for the Lila/Paul deed.

■ This case presents an apt occasion for the application of Rule 15(b) of the Federal Rules of Civil Procedure. Rule 15(b) provides that issues not raised by the pleadings but tried by express or implied consent of the parties shall be treated "in all respects as if they had been raised in the pleadings." In the interest of justice, the provisions of Rule 15(b) allow the court to overlook omitted theories of recovery that are actually litigated at trial, without objection. *See, e.g., Rhode Island Higher Ed. Assistance Auth. v. United States Dep't of Ed.,* 929 F.2d 844, 854 (1st Cir.1991); *Francois v. Francois,* 599 F.2d 1286, 1294 n. 6 (3d Cir.1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 679, 62 L.Ed.2d 653 (1980). This principle allows the court to deem plaintiff's amended complaint as properly pleading the various theories of recovery mentioned above, which were presented at trial without objection but omitted from the amended complaint. Likewise, defendant is not conclusively bound by his ambiguous admissions concerning the date of "transfer." If plaintiff desired to take the position that defendant's admissions in his answer were a concession concerning the date of delivery of the Lila/Paul deed, it was incumbent upon plaintiff "to oppose the introduction of evidence directly at variance" with the claimed admission. *Stacy v. Aetna Cas. & Sur. Co.,* 484 F.2d 289, 293–94 (5th Cir.1973). Where, as here, a party fails to object but instead allows full development of evidence directly at odds with a claimed admission, the contrary admission is "amended out" of the pleading, pursuant to the operation of Rule 15(b). *Id.* at 294; *accord, White v. Arco/Polymers, Inc.,* 720 F.2d 1391, 1395 (5th Cir.1983) (by failing to contend that the opponent's pleadings barred subsequent assertion of a contrary position, a litigant effectively waives the argument that the issue is settled by the pleading).

■ A formal motion to amend pleadings to conform to the proofs is not necessary. Rule 15(b) specifically provides that the absence of a formal amendment or request for leave to amend "does not affect the result of the trial of those issues actually litigated." *See Karlen v. Ray E. Friedman & Co. Com-*

*modities,* 688 F.2d 1193, 1197 n. 3 (8th Cir. 1982); 6A Wright & Miller, Federal Practice & Procedure: Civil 2d § 1493 at 16 (1990). All that is required is that the issue be tried by consent, and consent is generally inferred from a failure to object. *Id.* at 24. In the present case, where both parties are guilty of serious errors and omissions in their pleadings, where strict adherence to the pleadings would prejudice the substantial rights of both parties, where issues were tried by implied consent and without objection, the court will deem both the amended complaint and the answer thereto as conforming to the proofs actually presented at trial.

## II. Quiet Title Action (Count 1)

Count 1 of the amended complaint (¶¶ 1–19) seeks to quiet plaintiff's purported title to the 105–acre farm. The Michigan Revised Judicature Act of 1961, Mich.Comp.Laws § 600.101–.9947, establishes a single action to provide the relief that was formerly available by the equitable action to quiet title and the legal action of ejectment. *See generally, Tray v. Whitney,* 35 Mich.App. 529, 192 N.W.2d 628, 630 (1971). Under the statute, any person claiming a right, title or interest in land may bring an action against any other person who claims an inconsistent interest. Mich.Comp.Laws § 600.2932(1). Such actions are expressly equitable in nature. *Id.* at § 600.2932(5). Although plaintiff does not cite the controlling statute in her complaint or briefs, count 1 of her amended complaint must be analyzed in accordance with the principles established under this statute.

■ The Michigan courts have made it clear that the burden of proof in quiet title actions generally rests on the plaintiff. *See Ray v. Bentley,* 39 Mich.App. 578, 197 N.W.2d 827 (1972). Consequently, plaintiff bears the burden of establishing her own title in the 105–acre farm and bears the risk of non-persuasion in the event of equally balanced evidence. *Ray,* 197 N.W.2d at 827; *see also Prentis v. Prentis,* 189 Mich. 1, 155 N.W. 473, 474 (1915).

Plaintiff claims title by virtue of the deed from Lila Cowels (Pl.Ex. B) dated April 18,

1992, and recorded April 24, 1992. Defendant's previous deed to the property (Def.Ex. 1) dated September 10, 1987, and recorded on December 21, 1987, is an obvious impediment to plaintiff's claim. If the Lila/Paul deed validly transferred fee title to defendant in 1987, plaintiff has no interest in the farm by virtue of her later deed. By the time of trial, plaintiff had asserted three distinct theories supporting her attack on the Lila/Paul deed: (1) the signature of Lila Cowels was a forgery; (2) the signature of Lila Cowels was procured fraudulently by defendant and Bruce Lincoln; and (3) the Lila/Paul deed was delivered at a time when Lila had only a life estate in the farm. As noted in the previous section, only the first theory was clearly pleaded in the amended complaint. Each theory is analyzed below.

### A. *Forged Deed*

Plaintiff's amended complaint alleges that the signature of Lila Cowels on the Lila/Paul deed is false (¶ 13). The complaint, filed while Lila Cowels was still alive, was accompanied by her affidavit, in which she denied signing the deed and asserted that the signature was false (¶¶ 11–13).[1] At trial, however, plaintiff's own expert document analyst testified that the signature of Lila Cowels was indisputably true and authentic. No contrary evidence was offered. Needless to say, plaintiff has failed to sustain her burden of proof on the only clearly pleaded theory in her amended complaint.

### B. *Fraud In The Inducement*

■ By the time of trial, plaintiff's forgery claim had evolved into a contention that Lila Cowels was somehow fraudulently induced to affix her signature to the Lila/Paul deed on September 10, 1987. The Federal Rules of Civil Procedure require that claims of fraud be alleged in the pleadings with particularity. Fed.R.Civ.P. 9(b). In the present case, plaintiff's claim of fraudulent inducement was not pleaded at all, let alone with the particularity required by the rules. Defendant did not object at trial, however, to plaintiff's introduction of evidence supporting this theory. Therefore, for the reasons set forth in section

---

1. The affidavit of Lila Cowels was not offered or admitted into evidence at trial. Had it been offered, it probably would have been excluded as inadmissible hearsay.

**384**

I above, the court considers the pleadings amended to conform with the proofs submitted at trial, pursuant to Rule 15(b).

Under Michigan law, the burden of proof is on plaintiff to establish fraud. Fraud is never presumed, but must be established by clear and convincing evidence. *See Bitkowski v. Merrill Lynch, Fenner & Smith, Inc.,* 866 F.2d 821, 823 (6th Cir.1987); *Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 247 N.W.2d 813, 816 (1976). The Michigan courts have traditionally applied this standard to equitable actions seeking to set aside a deed on the basis of fraud. *See, e.g., Reo v. Vecchio,* 340 Mich. 216, 65 N.W.2d 773, 776 (1954).

Plaintiff has failed to sustain her burden of establishing fraud in the inducement. Plaintiff's principal evidence in support of this claim is the testimony of Leonard Speckin, a document examiner. As found in the statement of facts, Mr. Speckin's scientific analysis of the Lila/Paul deed disclosed the presence of the impressed signatures of both Bruce Lincoln and Karen Brodbeck on the Lila/Paul deed. From the position of the impressed signatures, Mr. Speckin concluded that Mr. Lincoln and Ms. Brodbeck had probably signed another quitclaim deed on top of the Lila/Paul deed. This fact, standing alone, proves nothing. The Lila/Paul deed was prepared on a printed form, which Mr. Lincoln's office kept in stock. The impressed signatures could have been made at any time. Nothing about the impressed signatures ties them to the transactions involving the present parties. Significantly, neither the signature of Lila Cowels nor that of the defendant was impressed upon the Lila/Paul deed.

The testimony of Mr. Speckin concerning impressed signatures proves only that at some time in the life of the piece of paper that ultimately became the Lila/Paul deed, Mr. Lincoln and Ms. Brodbeck signed a document, probably a quitclaim deed, that was on top of the Lila/Paul deed at the time the other document was signed. This fact is completely insufficient to prove the existence of an unspecified "third deed," used on September 10, 1987, as a fraudulent device to somehow trick Lila Cowels into parting with her property. The testimony of Mr. Lincoln and Ms. Brodbeck clearly establishes that Lila Cowels signed the Lila/Paul deed voluntarily and that no fraud was involved. Plaintiff has failed to support her unpleaded and ill-defined claim of fraud in the inducement with any material evidence, let alone the clear and convincing evidence required by Michigan law.

*C. Time of Delivery of Lila/Paul Deed*

Plaintiff has expended the most effort, both in her motion for summary judgment and at trial, on her third theory of attack on the Lila/Paul deed. This theory assumes the validity of the deed but argues that the deed was insufficient to pass fee simple title to Paul, because of the time of its delivery. Plaintiff argues that the Lila/Paul deed was delivered to Paul on September 10, 1987. At that time, Lila Cowels only had a life estate in the farm. The remainder interest was then vested in plaintiff and defendant, as a consequence of the 1984 deed from their parents. On this basis, plaintiff argues that the Lila/Paul deed, if valid, was effective only to pass Lila's life estate to defendant on September 10, 1987. Lila Cowels did not receive the remainder interests in the farm until delivery to her of the Barbara and Paul/Lila deed in late September, 1987. Consequently, plaintiff asserts that the deed given to her by Lila Cowels in 1992 (Pl.Ex. B) conveyed to plaintiff a vested remainder that would become possessory upon the death of Lila Cowels. Plaintiff claims that defendant's life estate was extinguished by the death of Lila Cowels and that plaintiff's purported vested remainder then matured into fee simple title.

If the Lila/Paul deed were delivered on September 10, 1987, plaintiff's analysis of Michigan law would be correct. By virtue of the 1984 deed, George and Lila Cowels had a life estate in the farm, with vested remainder in plaintiff and defendant. Under Michigan law, the vested remainder would become possessory upon the deaths of George and Lila Cowels, at which time plaintiff and defendant would share a joint life estate, with remainder in fee to the survivor. *See Albro v. Allen,* 434 Mich. 271, 454 N.W.2d 85 (1990). As a quitclaim deed conveys only that title

then held by the grantor, and not any after-acquired title, *see Doelle v. Read*, 329 Mich. 655, 46 N.W.2d 422, 423 (1951); *Olmstead v. Tracy*, 145 Mich. 299, 108 N.W. 649 (1906); *Brownell Realty, Inc. v. Kelly*, 103 Mich.App. 690, 303 N.W.2d 871 (1981), a quitclaim deed delivered by Lila Cowels to defendant on September 10, 1987, would have been effective only to convey to him a life estate, measured by the life of Lila Cowels, because this was the only interest that she would have had at the time. The vested remainder, at that time, would have rested in plaintiff and defendant. Consequently, if the Lila/Paul deed were in fact delivered on September 10, 1987, plaintiff would now be the fee owner of the farm, as the 1992 deed from Lila Cowels to plaintiff would have transferred to plaintiff a vested remainder interest. Obviously, the linchpin of this analysis is the assumption that the Lila/Paul deed was effective as of September 10, 1987.

Plaintiff's motion for summary judgment, filed before any extensive discovery in the case, asserted the foregoing sequence of events and sought the entry of judgment on that basis. I denied the motion, for two reasons. First, I was not satisfied with the quality of the evidence concerning the delivery of the various deeds in question. Plaintiff's motion asserted, without any proof, that the Lila/Paul deed was delivered to Paul on September 10, 1987. In response, defendant likewise presented nothing of an evidentiary nature, but appeared to accept plaintiff's statement of facts while arguing for a different and strained legal analysis. In denying the motion, I stated that plaintiff appeared to have the better side of the case, on the basis of the factual allegations then asserted, but that the facts had not yet been proved to my satisfaction. The second reason for denial of the motion was that it rested upon a possible, yet unlikely, assumption about the intent of Lila Cowels in September of 1987. It is certainly possible that Lila Cowels, then an elderly woman, intended to give her son only her life estate (obviously of limited duration because of her advanced years) while intending to recover from her children the vested remainder transferred to them in 1984. Before accepting this as her true intent, however, I concluded that proof, and not assump-tions, should be required on the issue of the grantor's intent. Therefore, I decided that it would be appropriate in this equity action to hear testimony concerning the circumstances surrounding the transaction, especially from Mr. Lincoln, the attorney who was presumably executing Lila Cowels' stated intentions.

■ Plaintiff's counsel has objected throughout the course of these proceedings to the consideration of extrinsic evidence concerning the intent of Lila Cowels or the date and circumstances surrounding delivery of the Lila/Paul deed. Plaintiff contends that the court is bound by the four corners of the deeds, in the absence of ambiguity. Although plaintiff's position may have some validity in a case involving *bona fide* purchasers who rely on the state of recorded title, that is not the situation here. Neither plaintiff nor defendant is a *bona fide* purchaser. They each seek the benefit of an alleged gift from their mother, given without consideration. Under Michigan law, the essential elements for a valid gift of real estate are (1) donative intent of the grantor to pass title to the grantee, (2) actual or constructive delivery, and (3) acceptance of the gift by the donee. *Stinebaugh v. Bristol*, 132 Mich.App. 311, 347 N.W.2d 219, 221 (1984); *see Osius v. Dingell*, 375 Mich. 605, 134 N.W.2d 657, 659 (1965). Extrinsic evidence is admissible on the issues of intent, delivery, and acceptance, without the necessity for any ambiguity in the deed itself. *See Schmidt v. Jennings*, 359 Mich. 376, 102 N.W.2d 589, 592–95 (1960) (delivery and acceptance of deed proved by parol evidence); *McMahon v. Dorsey*, 353 Mich. 623, 91 N.W.2d 893, 895 (1958) (fact of delivery must be judged in context of the words, acts and circumstances surrounding the transaction); *Prentis v. Prentis*, 189 Mich. 1, 155 N.W. 473, 474 (1915) (parol evidence admissible to show grantor's intent in quiet title action); *Havens v. Schoen*, 108 Mich.App. 758, 310 N.W.2d 870, 872 (1981). Although extrinsic evidence is not admissible to alter the express terms of an unambiguous deed, deeds are generally silent on issues such as underlying intent and date of delivery. Hence, consideration of extrinsic evidence in no way alters or varies the terms of the instrument.

The principal evidence presented at trial that was not available at the time of the summary judgment hearing was the deposition of Bruce Lincoln, the attorney who drafted the Lila/Paul deed and the Barbara and Paul/Lila deed. His clear and unequivocal testimony established that Lila Cowels' intent was to transfer the farm to her son. In light of this intent, Lincoln advised Lila Cowels not to deliver her deed to defendant until she had received the Barbara and Paul/Lila deed, at which time she would have fee title to the property. Consequently, Mr. Lincoln's testimony bears directly on both critical issues of donative intent and delivery. Lincoln's testimony completely negates the unlikely assumption identified above, which is critical to a finding in plaintiff's favor. This testimony also strongly supports the testimony of defendant, who stated that his mother gave him the Lila/Paul deed when they were together in Michigan, after she had received the Barbara and Paul/Lila deed. There is no direct or circumstantial evidence to support plaintiff's contention of delivery of the Lila/Paul deed on September 10, 1987.

■ Plaintiff attempts to counter defendant's evidence of delivery in three ways. First, plaintiff points to ambiguous statements in defendant's answer and in his summary judgment brief to the effect that the farm was "transferred" to defendant on September 10, 1987. Plaintiff would have the court construe these statements as an admission concerning the date of delivery, rather than a statement concerning the date of the deed. As noted in section I above, these statements cannot be deemed binding admissions concerning the critical issue of the date of delivery. The amended complaint, after all, does not make any specific allegation concerning the date of delivery of the Lila/Paul deed. It would be anomalous to hold that, even though plaintiff failed to allege a fact critical to her case, defendant managed to nevertheless admit the critical fact, almost in passing. Furthermore, if plaintiff wished to preclude evidence at trial on the theory that it was contrary to a binding admission made in the pleadings or summary judgment briefs, it was incumbent upon plaintiff to object on that basis at trial and to introduce the pleading into evidence. *See American*

*Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir.1988) (citing *Shell v. Parrish*, 448 F.2d 528, 530 (6th Cir.1971)). Plaintiff did neither. For these reasons, the court will treat defendant's answer as amended to conform to the proofs, the same lenient treatment extended to plaintiff's amended complaint.

■ Plaintiff's second attack on defendant's testimony concerning delivery of the deed in December of 1987 rests upon the testimony of Michael LaVean, plaintiff's son. Mr. LaVean testified that on December 1, 1987, he drove his grandmother to Virginia, where she stayed during the entire month of December for the holidays. Plaintiff's testimony supported this chronology. Although I credit Mr. LaVean's testimony, it is not fatal to defendant's position. Defendant's testimony, and supporting documentary evidence, established that he and his mother took a long road trip in October and November of 1987, travelling to Virginia and Florida. They returned to Michigan on November 29, 1987. Defendant testified that Lila Cowels delivered the Lila/Paul deed to him shortly thereafter, in December of 1987, at her house in Lake Odessa. He recorded the deed on December 21. Michael LaVean's testimony establishes that Lila Cowels was absent from the State of Michigan from December 1 through the end of the month. Consequently, Mr. LaVean's testimony shows that delivery of the deed could not have occurred in the precise time frame identified by defendant. Given the fact that six years had elapsed between the time of delivery and the time of trial, a few days' discrepancy is not fatal to defendant's claims or to his credibility. The fact remains that defendant and his mother were present in the State of Michigan for at least two days in late November, 1987, during which time there was ample opportunity to deliver the deed to defendant. A discrepancy of a few days in these circumstances is insufficient to overcome defendant's testimony.

■ Third, plaintiff contends that Michigan law presumes delivery on the date of acknowledgement and excludes extrinsic evidence to show otherwise. This is a gross

mischaracterization of Michigan law. Michigan law does create a presumption that delivery of a deed takes place at the time of its acknowledgement. *See Miller v. Peter,* 158 Mich. 336, 122 N.W. 780, 782 (1909). This, however, is a "bare presumption" and is subject to rebuttal by evidence. *Eaton v. Trowbridge,* 38 Mich. 454, 458 (1878). The effect of the presumption is so weak that it ceases to have any probative effect upon the introduction of contrary evidence. *See Jackson City Bank & Trust Co. v. Sternburg,* 281 Mich. 313, 274 N.W. 806, 808 (1937). From the earliest days of Michigan jurisprudence, the Michigan courts have held that extrinsic evidence is admissible to show the true date of delivery of a deed. *See, e.g., Cook v. Knowles,* 38 Mich. 316, 319 (1878) ("The true date of the fact of delivery was lawfully provable by matter outside the deed and by parol."). The *Cook* court branded as "absurd" the idea that the deed itself is conclusive proof of the date of its own delivery. *Id.* Since that time, the Michigan courts have continued to hold that evidence of the words, actions, and circumstances surrounding a transaction are admissible on the question of delivery. *See Osten–Sacken v. Steiner,* 356 Mich. 468, 97 N.W.2d 37, 41 (1959).

■ Although Michigan law places on plaintiff the general burden of proof in this case, defendant bears the burden of proving his own title. *See Stinebaugh v. Bristol,* 132 Mich.App. 311, 347 N.W.2d 219, 221 (1984). Consequently, as the party claiming title under the Lila/Paul deed, defendant bears the burden of proving the date of delivery of that deed. *See Dillon v. Meister,* 319 Mich. 428, 29 N.W.2d 846, 849 (1947); *Barras v. Barras,* 192 Mich. 584, 159 N.W. 147, 149 (1916). On the basis of the record before me, I find that defendant has sustained his burden of proving delivery of the Lila/Paul deed to him in Lake Odessa, Michigan, on a date late in November, 1987. The precise date is immaterial, so long as delivery was after delivery to Lila of the Barbara and Paul/Lila deed in late September, 1987.

Having found that the Lila/Paul deed was delivered in late November, 1987, the court is constrained to hold against plaintiff on her quiet title action. The facts proved at trial, especially the testimony of Mr. Lincoln, show a transaction structured to consolidate title in Lila Cowels for the purpose of her subsequent transfer of fee title to defendant. The Barbara and Paul/Lila deed was intended to recover from plaintiff and defendant the remainder interest transferred to them by the 1984 deed from their parents. This intent was effectuated by defendant's signing of the Barbara and Paul/Lila deed on September 10, 1987, plaintiff's signing of that deed on September 22, 1987, and delivery of the fully executed deed to Lila Cowels, through her attorney, in late September of 1987.[2] Consequently, by late September of 1987, fee simple title in the 105–acre farm resided in Lila Cowels, by virtue of the merger of her life estate with the vested remainder transferred to her by her children. *See Hovey v. Nellis,* 98 Mich. 374, 57 N.W. 255, 257 (1894); *Ryder v. Flanders,* 30 Mich. 336, 339 (1874).

■ The delivery of the Lila/Paul deed in November of 1987 was effective to transfer to defendant the fee simple title of Lila Cowels. The fact that the deed was dated September 10, 1987, is immaterial. Under Michigan law, a deed is effective only when delivered. *See Brown v. Keiser,* 148 N.W. 730, 733 (Mich.1914); *Thatcher v. St. Andrew's Church,* 37 Mich. 263, 268–69 (1877); *see also Resh v. Fox,* 365 Mich. 288, 112 N.W.2d 486, 488 (1962); *McMahon v. Dorsey,* 353 Mich. 623, 91 N.W.2d 893, 895 (1958). Until delivery, a deed is inoperative and can be recalled by the grantor. *See Hynes v. Halstead,* 282 Mich. 627, 276 N.W. 578, 580–81 (1937). These cases make it clear that delivery is the operative act giving validity to a deed, and that the deed takes effect as of the date of delivery. The date of signing the deed, by contrast, is immaterial. *See* Thompson on Real Property § 3228 at 422. In this regard,

---

2. As plaintiff correctly points out (summary judgment brief at 4–6; post-trial brief at 6–7), the Barbara and Paul/Lila deed was a joint deed, obviously intended to take effect upon the signing by both plaintiff and defendant and designed to transfer the entirety of their remainder interests back to their mother. That this was the intent is patent on the face of the document and is established as well by the testimony of plaintiff, defendant, and Mr. Lincoln.

Michigan law is in accordance with the general common law in this country:

A deed is consummated by its delivery by the grantor and its acceptance by the grantee and becomes operative from that time, not from the date it bears, that is, the date of execution.

23 Am.Jur.2d, Deeds, § 329 at 292–93 (1983).

In summary, the evidence produced at trial showed a transfer of fee simple title to defendant by virtue of delivery of the Lila/Paul deed to him in late November, 1987, at which time she possessed fee simple title in the 105–acre farm. Defendant accepted the deed and recorded it. The deed by which plaintiff claims title, delivered to her in 1992, conveyed nothing, as Lila Cowels had already parted with title. A grantee receiving a quitclaim deed from a grantor who has previously conveyed the property takes no title whatsoever. *Tackaberry v. Monteith,* 295 Mich. 487, 295 N.W. 236, 238 (1940). The court therefore finds on behalf of defendant and against plaintiff on count 1 of the amended complaint.

## II. Count 2 (Claim By Personal Representative)

### A. *Capacity To Sue*

Count 2 of the amended complaint was brought to enforce rights allegedly belonging to Lila B. Cowels at the time of her death. The caption of the amended complaint identifies plaintiff as the personal representative of the estate of Lila B. Cowels. The body of the amended complaint, however, does not allege plaintiff's capacity in this regard, nor does it allege how plaintiff came to be personal representative or even the fact of Lila B. Cowels' death. As noted above, defendant did not raise any objection on this basis until trial.

During the course of trial, defendant did object to the lack of proof concerning plaintiff's status as personal representative of the estate of Lila B. Cowels. Defendant tendered to the court a letter from the Ionia County Register of Deeds, attesting to the fact that no estate had ever been opened for Lila B. Cowels, deceased, and no personal representative appointed. In response, plaintiff asserted that Lila B. Cowels left a will naming plaintiff as her personal representative. It was conceded at the time of trial, however, that the will had never been admitted to probate and no letters of authority had ever been issued to plaintiff to act as personal representative.

At the close of proofs, the court determined that the claims brought in count 2 must be brought by the personal representative of a decedent's estate. Under Michigan law, only the fiduciary of an estate has a right to possession of the property of the deceased. Mich.Comp.Laws § 700.601. The term "fiduciary" includes personal representatives of a decedent's estate. Mich.Comp. Laws § 700.5. A personal representative is empowered to act by the issuance of letters of authority. Mich.Comp.Laws § 700.312. A person, such as plaintiff, who is named as personal representative in a will, is entitled to petition for appointment and to receive priority in this regard. Mich.Comp.Laws § 700.311. Until, however, the will is admitted to probate, it is merely ambulatory and has no legal effect. *See In re Power's Estate,* 362 Mich. 222, 106 N.W.2d 833, 836 (1961). Likewise, the party named as personal representative in the will is a "stranger" to the estate unless and until qualified and may not act in its behalf. *See Wagner v. La Croix' Estate,* 289 Mich. 126, 286 N.W. 182, 183 (1939). Consequently, at the time of the trial, plaintiff Barbara LaVean was not the personal representative of Lila B. Cowels, deceased, and had no right to assert any claim on behalf of her estate.

This issue is governed by Rule 17 of the Federal Rules of Civil Procedure. That rule provides that every action "shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a). The effect of this rule is that the action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right. *See* 6A Wright & Miller, Federal Practice & Procedure: Civil 2d § 1543 at 334 (1990). To determine the identity of the real party in interest, the court must look to the substantive law creating the right being sued upon. *Id.* at § 1544. In diversity actions, therefore, state law will control the identifi-

cation of the real party in interest. *Id.* In the present case, as Michigan law governs the substantive aspects of this case, count 2 must be brought by the person who possesses the cause of action under Michigan law. As noted above, the real party in interest under Michigan law is the personal representative of the estate of Lila B. Cowels, deceased.

Because plaintiff was not qualified as the personal representative at the time of trial, Rule 17(a) would require dismissal of the case, but for a saving provision in the rule. The rule provides:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed.R.Civ.P. 17(a). The purpose of this provision is to allow the court to avoid forfeiture and injustice when a technical mistake has been made in naming the real party in interest. 6A Wright & Miller, § 1555 at 412–13. Consequently, although defendant's motion to dismiss count 2 was well taken, the court was obliged by Rule 17(a) to afford plaintiff a reasonable time to correct the problem, as defendant failed to raise any objection until the day of trial. *See Levinson v. Deupree,* 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953) (action commenced by administrator whose appointment was void could be amended, even after statute of limitations had run, to allege effective appointment); *Executive Jet Aviation, Inc. v. United States,* 507 F.2d 508, 514 (6th Cir.1974). Therefore, the court did not grant defendant's motion for dismissal outright, but allowed plaintiff a ten-day period to remedy the problem, upon pain of dismissal.

Plaintiff did remedy the situation by applying for and receiving letters of authority within five days of the close of proofs (Letter of Authority, docket # 38). Under Rule 17(a), this appointment relates back to the filing of the amended complaint. *See* 6A Wright & Miller at § 1555. The court therefore denies defendant's oral motion for judgment as a matter of law, Fed.R.Civ.P. 52(c), made at the close of proofs.

## B. *Merits*

The merits of the personal representative's claims against defendant are easily resolved. As pleaded, count 2 of the amended complaint sought to recover the balance due and owing on loans allegedly made by Lila B. Cowels to defendant. As set forth in the statement of facts above, Lila B. Cowels did make loans to defendant in connection with his purchase of real estate. Defendant's testimony and exhibits, however, showed to my satisfaction that the loans were repaid in full before Lila B. Cowels died. On this basis, the court finds that plaintiff has failed in her burden of proving that money was owing to Lila B. Cowels from defendant at the time of her death.

■ By the time of trial, plaintiff had shifted ground with regard to count 2. At trial, plaintiff asserted an unpleaded claim arising from an alleged quitclaim deed (Pl. Ex. D) purporting to transfer defendant's interest in 918 Lakeview Ave., Lake Odessa, to Lila Cowels. The date of the deed was March 26, 1985. Defendant sold the property in 1990. The claim presented at trial, therefore, was not to collect an unpaid loan but to recover the proceeds of sale of the property, on the theory that the property belonged to Lila Cowels. Defendant's exhibits and testimony showed that the deed was never intended to convey title to Lila B. Cowels, but was intended to provide her security for a purchase money loan in the event of a default by defendant. As the loan has now been paid in full, the deed (given in the nature of a mortgage) is discharged.

■ In support of this claim, plaintiff merely proved the existence of the deed, found in a torn-up condition among the papers of Lila B. Cowels after her death, and proved the validity of the signatures. In final argument, plaintiff asserted strenuously that the deed must be judged on its face, and that defendant is precluded in the absence of ambiguity from challenging the absolute na-

ture of the deed. Plaintiff's contention is completely unfounded in Michigan law. As the leading commentator on Michigan real estate law has said:

Michigan courts will also treat an absolute deed (or other absolute conveyance) as an equitable mortgage if the real estate conveyed was in fact intended to serve as security for an obligation. There need not have been fraud or error. Instead, the courts consider such factors as a bargain sale price, adverse financial circumstances on the part of the grantor, prior negotiations between grantor and grantee for a loan, and subsequent conduct of the parties concerning possession, taxes, and insurance to determine whether the conveyance actually creates a security interest.

1 J.G. Cameron, Jr., Michigan Real Property Law, § 18.6 at 659–60 (2d ed. 1993) (citations omitted). Mr. Cameron's statement is well supported by Michigan case law, under which the issue whether a conveyance creates only a security interest is a question of fact to be determined by the trier of fact on the basis of all available evidence. *See, e.g., Wilson v. Potter,* 339 Mich. 247, 63 N.W.2d 413, 415 (1954); *Miskinis v. Bement,* 301 Mich. 365, 3 N.W.2d 307, 308 (1942); *Koenig v. Van Reken,* 89 Mich.App. 102, 279 N.W.2d 590, 592 (1979). As the party contending that an absolute deed is other than it appears on its face, defendant must bear the burden of proving that the deed is actually a mortgage, by "clear and convincing" proof. *See Ferd L. Alpert Indus. v. Oakland Metal Stamping Co.,* 379 Mich. 272, 150 N.W.2d 765, 768 (1967); *Miller v. Peter,* 158 Mich. 336, 122 N.W. 780, 782 (1909). Parol evidence is expressly admissible on this question, without the necessity of first showing fraud, mistake, or ambiguity. *Alpert,* 150 N.W.2d at 767; *Wells v. Park,* 233 Mich. 277, 206 N.W. 307, 308 (1925).

■ On the basis of the record before me, I find that defendant has shown by clear and convincing evidence that plaintiff's exhibit D was not an absolute deed but merely a security device. Defendant has presented detailed accounting records showing the existence of a loan from his mother, periodic repayments to her, and a complete satisfac-

tion of the loan upon defendant's sale of the real estate. Defendant's payoff of the principal amount at the time of sale is reflected by cancelled checks and receipts signed by Lila B. Cowels. Plaintiff has presented no evidence that Lila Cowels was intended to receive a present interest in the real estate by virtue of the deed. In fact, all the evidence points in the opposite direction. Especially telling are Lila Cowels' failure to assert any interest in the real estate during her lifetime, her tearing up of the deed (obviously indicating satisfaction of the loan) and her failure to ever record the deed, which in any event was not notarized or in recordable form. I therefore find that the estate of Lila Cowels has no claim against defendant arising from the sale of the 918 Lakeview property, because Lila Cowels had no interest in the property.

Consequently, on both the theory pleaded in count 2 (money due and owing) and on the unpleaded theory (recovery of proceeds of the sale of 918 Lakeview arising from the decedent's interest, as created by plaintiff's exhibit D), the court finds in favor of defendant and against plaintiff, in her capacity as personal representative of the Estate of Lila B. Cowels.

### Relief

A defendant in a quiet title action who has established his rights with respect to property is entitled to dismissal of the action against him and to a decree quieting title in him. *See Miller v. Steele,* 146 Mich. 123, 109 N.W. 37 (1906); *see also Ohio Oil Co. v. Magnolia Petro. Co.,* 120 F.2d 831, 837 (8th Cir.), *cert. denied,* 314 U.S. 658, 62 S.Ct. 112, 86 L.Ed. 528 (1941); 74 CJS Quieting Title, § 100 at 150. Therefore, defendant is entitled to judgment in his favor quieting title to the 105–acre farm in him as a consequence of his proofs relevant to count 1.

With regard to count 2, judgment will be entered on behalf of defendant and against plaintiff as personal representative of the estate of Lila B. Cowels, deceased.

### EXHIBIT A TO OPINION AND JUDGMENT

The South ¼ of the East ½ of the Southeast ¼ of Section 32, Township 6 North Range 7

West, Berlin Township, Ionia County, Michigan.

The Northwest ¼ of the Northwest of Section 9, Township 5 North, Range 7 West, Odessa Township, Ionia County Michigan.

All of the North ½ of the Northeast fractional ¼ of Section 5, Town 5 North, Range 7 West, Odessa Township, Ionia County, Michigan, lying West of the center line of the Getz Drain, more particularly described as: All of the North ½ of the Northeast fractional ¼ of Section 5, Town 5 North, Range 7 West, excepting the following described part;

Commencing at the Northeast corner of Section 5, Town 5 North, Range 7 West, thence West on Section line 1050 feet to the center line of Getz Drain, thence South 1034 feet on center line of Drain, thence South 6° West 272 feet on center line of Drain to the South line of said North ½ of Northeast fractional ¼, Section 5, thence East on said South line of North ½ of Northeast fractional ¼, Section 5, to the Section line a distance of 1123 feet; thence North 1°57' West 1305 feet on Section line to place of beginning.

### *JUDGMENT*

This matter having been tried to the court sitting without a jury, the court having issued its findings of fact and conclusions of law this date and being fully advised in the premises:

IT IS ORDERED AND ADJUDGED that plaintiff take nothing by her amended complaint against defendant and that judgment be and hereby is entered on behalf of defendant and against plaintiff on all claims.

IT IS FURTHER ORDERED AND ADJUDGED that plaintiff, in her capacity as personal representative of the Estate of Lila B. Cowels, deceased, take nothing by her complaint against defendant and that judgment be and hereby is entered on behalf of defendant and against plaintiff on all claims.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant's title to the real estate, the legal description of which is attached hereto, marked Exhibit A, and incorporated herein by reference, be and hereby is declared superior to that of plaintiff, and plaintiff's deed of April 18, 1992, be and hereby is declared a nullity.